## PACIFIC-WYOMING OIL CO. v. CARTER OIL CO.
### (No. 1107, August 19th, 1924; 228 Pac. 284.)

MINES AND MINERALS—CONTRACTS—OIL AND GAS LEASE—BONUS AGREEMENTS—PUBLIC POLICY—PLEADING—DEMURRER.

1.  Extra bonus, payable under contract for procuring oil development contracts with homesteaders, when defendant, under appropriate legislation, had an opportunity to secure right to develop and operate lands for oil and gas mining purposes, so long as they should be found in paying quantities, *held* to mean that defendant should have an opportunity, upon taking steps necessary to be taken by it, to acquire right under which it might be reasonably enabled to fully develop and operate such lands for oil and gas mining purposes upon reasonable terms, until such oil and gas in paying quantities was all extracted from the land.

2.  In grant for oil and gas mining purposes, condition is implied that grantee must diligently explore, develop, and operate the land for oil and gas in good faith.

3.  Where defendant agreed to pay an extra bonus for procuring an oil development contract with homesteaders, when it should have "opportunity" to develop and operate, *held*, that fact that mining permit to homesteaders was limited in time did not deprive defendant of such an opportunity, in absence of showing that such limitation was unreasonable.

4.  Contract with homesteaders to secure oil and gas rights *held* not void being against public policy because of Act Cong. Feb. 25, 1920, § 13 (U. S. Comp. St. Ann. Supp. 1923, § 4640¼ff), concerning conditions under which prospecting permits are to be granted.

5. In an action for bonus agreed to be paid for procuring execution of oil and gas contracts by homesteaders to· defendant, when latter should obtain opportunity to develop 'and operate, court will assume on demurrer to complaint that homesteaders agreeing to assign their permits for mining oil and gas would not violate their contract.

6. In an action for bonus agreed to be paid for procuring execution of oil and gas contracts by homesteaders to defendant, when latter should obtain opportunity to develop and operate, court will assume on demurrer to complaint that defendant was qualified party to accept assignments of permits to mine for oil and gas under Secretary of Interior's Regulations, March 11, 1920, § 12½.

APPEAL from District Court, Natrona County, CYRUS O. BROWN, Judge.

On, petition for rehearing.   See also 31 Wyo. 314, 226 Pac. 193.

*F. Chatterton, J. B. Roote* and *F. A. Williams,* for plaintiffs and appellants.

*James A. Veasey, Peter Q. Nyce,* and *Hagens & Murane,* for defendant and respondent.

BLUME, Justice.

We held in the original opinion that, as disclosed upon the face of the pleadings herein, "the condition upon which the payment demanded in the petition depends, has been fairly, nay, even literally and strictly fulfilled;" and that the possibility that a future act of Congress, not likely to be enacted, which might change the present law giving lessees under the act of Congress of February 25, 1920 the preference right of renewal, is so remote, and hence of such trifling significance, that it should not be taken into consideration in determining whether such condition has been so fulfilled.

Counsel for respondent have filed a petition for rehearing and a vigorous brief in support thereof.   We have given them a most painstaking consideration, but while this case, upon the face of the pleadings, may be close to the border

line, so that it is hard to determine whether the condition
mentioned should be considered as strictly performed or
whether the contingency contemplated in the contract in-
volved herein has happened, we have not been able to come
to a different conclusion than that arrived at originally.

We shall not attempt to go into the details of the argu-
ments now advanced by counsel but shall as briefly as pos-
sible consider some of the main points. Before proceeding,
we might mention that the contention that our holding as
to performance of the contract is upon grounds not pre-
viously argued, does not appear to be well taken, since the
appellant specifically argued that the opportunity given
under the law gave "ample time within which to extract
the oil and gas, in fact a much longer period of time than
would be 'a period as long as oil and gas shall be found in
paying quantities' " and the main argument of respondent
was directed to showing that the conditions of the contract
had not been performed.

1. Counsel claim that we have overlooked the following
provisions of the contract of March 12, 1919, which are ad-
ditional to those mentioned in the original opinion:

"Should the second party (respondent) be vested with
the right to develop and operate said lands for oil and gas
mining purposes as aforesaid, then to the extent of the
lands covered thereby and upon the vesting of such right,
the second party shall pay the first party a royalty of 5 per
cent from all oil produced from said lands in addition to
the 2½ per cent royalty payable to the particular home-
steader in addition to the royalty payable to the United
States— * * * Provided, further, that if such con-
gressional legislation shall vest the particular homesteader
or the second party with a mineral patent covering part of
the lands described above which relieves the second party
from any royalty payable to the United States, then as to
operations conducted on that land, the only royalties pay-
able by the second party shall be 2½ per cent payable to

the homesteaders and 5 per cent payable to the first parties. In the event the second party shall not elect to acquire the oil and gas rights under any contract with said homesteader and in the event Congress shall confer said rights on such homesteader, then upon demand of first parties second party shall assign that particular contract with the homesteader to first parties.''   .

It is also claimed that we have overlooked certain provisions of the contracts with the homesteaders as follows: Section 3 provides that in the event that the homesteaders are vested with title to the minerals in the land, as well as the surface right, they will execute to respondent, upon demand by respondent, a lease upon the following terms: (1) to run for a term of 10 years and as long thereafter as oil or gas shall be produced therefrom in paying quantities; (2) to reserve a royalty of one-eighth of the oil produced, or $250.00 for each gas well; (3) if producing oil or gas wells are on adjoining lands, offset wells shall be drilled on the lands in question; if no offset wells are necessary, lessee shall drill a well on said land within two years.

Section 4 of said contracts with the homesteaders provides that if the latter obtain from the United States a permit, lease, or other contract or instrument, granting them or either of them the right to develop and operate said lands or a part thereof for oil and gas mining purposes, then they will, upon demand by respondent, make application to the proper governmental authority for such permit, lease or contract to be taken for the exclusive use of respondent, subject to royalties; that such permit, lease or other contract shall be immediately assigned to respondent, subject to the royalties due the United States and subject to 7½ per cent royalty to the homesteaders; if there is no provision in the law for the assignment provided for, then the homesteader shall hold the title created thereby for the exclusive use of respondent subject to said royalties. All expenses to obtain the permit or lease are to be paid, and all

development work required by the permit or lease must be done, by respondent.

It will be noticed that the provisions of the contract of March 12, 1919, and of the contracts with the homesteaders seem to be inconsistent as to the royalty payable to the latter, but no point is made of that either in the original arguments of the parties or in the brief of respondent for rehearing, and we express no opinion thereon, but shall assume that proper explanation therefor exists. Nor is it improper here to say, in as much as it is urged that we erred in overlooking the provisions in the contracts with the homesteaders above mentioned, that counsel for respondent in their original brief, as well as on oral argument, strenuously maintained "that the homesteaders' contracts have no relation to this case." The position now taken appears to be opposed to that taken originally, for the difference found to exist in the several provisions of the homesteaders' contracts is now said to be of the "very essence of the case." We may therefore, be pardoned, if we cannot fully grasp, or see the soundness of the argument now advanced by counsel. The gist of this argument, if we understand counsel, is that inasmuch as the contract with the homesteaders provides for two different contingencies—one contingency mentioned in section 3 thereof, which contemplates that the homesteaders might become the absolute owners of the oil and gas in the land, and the other contingency mentioned in section 4, which contemplates that the homesteaders will receive only a right to an oil and gas permit or lease—and inasmuch as section 3, and that only, provides for a lease of "ten years and as long as oil and gas shall be found in paying quantities," that, therefore, the provision for the payment of the extra bonus "when the second party is actually vested with the right to develop and operate said lands for oil and gas mining purposes for a period as long as oil and gas shall be found in paying quantities, or when the second party under appropriate legislation has an opportunity to secure such right," applies only to the contingency

contemplated in section 3 above mentioned of the contracts with the homesteaders. We do not, however, from the facts as they now appear before us, see the necessary connection. And the provision in the contract of March 12, 1919, above quoted, that if the homesteader is vested with a mineral patent, the royalty payable is limited to 2½ per cent to the homesteader and 5 per cent to appellant, does not, in the present state of the record, strike us, as it does counsel for respondent, as shedding much light on the subject. The "opportunity" of respondent to acquire a right to develop and operate the land for oil and gas mining purposes for as long as that shall be found in such land in paying quantities, surely does not, in the absence of a contract or understanding to that effect, necessarily mean that such opportunity must be derived from a definite source or from one of two sources, when two sources are referred to in the contract.

It is argued that the right for which respondent contracted is a peculiar right and that we have failed to grasp the nature thereof. The peculiarities have not been made clear to us. If counsel mean that a right to develop and operate land for oil and gas mining purposes "for as long as oil and gas is found in paying quantities" had a technical meaning, in contemplation of which the contract herein was executed, then such fact does not appear in the record before us, and hence we cannot consider that point. Among other things, in this connection, counsel say:

"Clearly the opportunity which conditioned respondent's obligation was an opportunity that would vest in praesenti for the entire term contracted for and the estate so presently vested to be characterized by the same rights and obligations throughout the entire term."

We cannot agree to the correctness of this statement. Taking all of the various arguments made by counsel for respondent, their contention, in its ultimate analysis, seems to be that respondent is, under the contract of March 12,

1919, entitled to the opportunity to receive the equivalent of a grant vesting in praesenti the total right that might ultimately be acquired, and expressing in definite and so many words that the right to develop and operate the land for oil and gas mining purposes is to last "for as long as oil and gas, in paying quantities, is found." We do not think that to be the meaning of the contract. Let us re-analyze it. The extra bonus is payable under clause (b) of the contract in question and quoted in the original opinion, when respondent, (using our own quotation marks) "under appropriate legislation, has an opportunity to secure a right to develop and operate said lands for oil and gas mining purposes for a period as long as oil and gas shall be found in paying quantities." The opportunity to secure the right must come through the contract with the homesteaders and through "appropriate legislation;" Legislation reasonably calculated to secure the right must be enacted. In so far as the conditions of the "right" are not defined in the contract, they should be reasonable. It is not necessary to determine whether extraneous evidence would or would not be admissible to explain the meaning of the terms "opportunity" and "right" as understood by the parties, but, in the absence of evidence to the contrary, taking the usual and ordinary meaning of the language employed, and nothing in the contract indicating the contrary, the most that said contract, as to the point under consideration, can mean is, that respondent shall have an opportunity, under the contracts with the homesteaders and under appropriate Congressional legislation, the respondent taking the steps necessary to be taken by it, to acquire a right, or privilege, under which it may be reasonably enabled to fully develop and operate said land for oil and gas mining purposes, upon reasonable terms, till the oil and gas, in paying quantities, is all extracted from such land. One of the steps necessary to be taken by respondent is that it must make a demand upon the homesteaders to apply for the permit provided by the Act of Congress; another that

it must pay the expense of obtaining the permit; another—if the permit is obtained—to do all development work. The opportunity mentioned, the basis for the ultimate acquirement of the right contracted for, must, of course, exist, before the extra bonus sued for is payable. But the "opportunity" to secure a right does not require that the total right that may ultimately be acquired through the exercise of the opportunity, must be vested in praesenti. The very use of the term "opportunity" in this connection implies that something remains to be done, some steps remain to be taken, to acquire the right itself. And if all that is necessary to be done depends upon the acts of respondent, or upon its acts and the acts of others which may be presumed to, or will reasonably, follow upon the acts of the respondent, then such opportunity may be said to be complete so far as such acts are concerned. And if the respondent fails or refuses to take steps necessary by it to be taken, and which, if taken, would reasonably insure the performance of acts required by the contract to be done by others, then respondent ought not to be able to say that such other acts might not be done; otherwise, it would be entirely in the power of respondent to defeat the rights of appellants. We think, as will be stated later, that certain acts contemplated in the contract to be done by others may be presumed to, or would reasonably, follow upon the acts of respondent herein. And, as shown in the original opinion, the royalty payable for the right to develop and operate the land for oil and gas mining purposes cannot be said to be unreasonable. How counsel, in the present state of the record, can maintain that the ultimate estate acquired through the opportunity necessarily "should be characterized by the same rights and obligations throughout the entire term" is more than we can understand. The contract does not so provide, and, at least without explanatory evidence, we cannot read that limitation into it, but must hold that the only thing required in that respect is that the terms and conditions, not fixed in the contract, must be reasonable. The condi-

tions of development and operation are not stated in the contract. Hence all that is required as to them is that they shall be reasonable. No unreasonable requirement in the act of Congress has been pointed out. In fact, in the absence of contrary provisions in the contract, certain conditions are implied in a grant for oil and gas mining purposes. One of these is that the grantee of the right must diligently explore, develop and operate the land for oil and gas in good faith. 27 Cyc. 728. The right would in no event last for all time. The amount of oil and gas in the land is limited in quantity, and we are fully convinced that a lease for 20 years, with preference right of renewals upon reasonable terms and conditions, gives, within the meaning of the provision for the payment of the extra bonus, full and complete opportunity to extract, with diligence and in good faith, all the oil and gas that may be found in the land. The law as it stands and as it stood at the time of the filing of the petition herein, provides for preference right of renewals. We cannot indulge in any presumption that it will be repealed. We cannot speculate upon such uncertainty in settling the rights of the parties herein, and hence the possibility of such repeal, remote as we have shown that to be, cannot be taken into consideration by us in determining whether the contingency under which the extra bonus is to be paid, has arisen.

2. The original opinion is mainly based on the assumption that the respondent had the opportunity to obtain a lease for 20 years with preference right of renewals upon reasonable terms and conditions. We failed to mention the law providing for a permit to drill for oil and gas preliminary to a lease,—a matter to which our special attention is now called,—mainly because that subject was, in the briefs, apparently considered of little importance at this stage of the case. It was, for the purposes of this hearing, conceded in the argument that respondent had some sort of an opportunity to acquire the right contracted for, and we followed,

in the main, the line of argument of counsel for respondent. Section 20 of the Act of Congress of February 25, 1920, provides that the homesteader shall have a preference right to a prospecting permit and lease. Section 13 of the Act limits the life of the permit to two years, with a right for an extension, under certain conditions, for an additional period of two years. If no oil or gas is found, no lease is issued. But if a discovery is made, then, by section 14 of the act, the holder of the preference right is entitled to a lease, as provided in section 20 of the act, to one-fourth of the land embraced in the permit, but to at least 160 acres, if that much land is embraced in the permit, with a royalty of 5 per cent payable to the United States. The permittee is also entitled to a preference right to a lease for the remainder of the land in his prospecting permit at a royalty of not less than 12½ per cent, "the royalty to be determined by competitive bidding or fixed by such other method as the secretary may by regulation prescribe."

We do not think that these provisions of the law affect our decision herein in holding that the petition states a cause of action. If it is true as contended—a point we do not decide—that no sufficient "opportunity" is granted by the law to acquire a right to develop and operate *all* of the land for oil and gas mining purposes, that point goes only to the measure of recovery, the contract in the case providing that the additional bonus sued for should be paid "upon such acreage only for which respondent acquired such opportunity." Hence the point is not involved in determining the correctness of the decision on the demurrer. Nor does the fact that the permit is limited in time deprive the respondent of the "opportunity" to secure the ultimate right for which it contracted, unless it be shown that such time is unreasonable. The contract with the homesteaders requires that the respondent must perform all development work required by the permit, and in the absence of a provision in the contract in dispute to the contrary, the work

must be done with reasonable diligence.  Congress, by fix-
ing the duration of the permit, evidently determined that
the time granted is reasonable, and we cannot say that this
is not true.  Hence, if respondent does what it agreed to
do, namely, diligently pursues its exploration work, a lease,
if oil or gas is found in paying quantity, will be granted to
the permittee for at least 160 acres of each of the tracts of
land here involved.  If no oil or gas in paying quantity is
found, no lease is issued under the law, and would, of
course, not be necessary in order to extract oil or gas that
does not exist.

3.    Section 13 of the Act of Congress aforesaid provides
that prospecting permits are to be granted by the Secretary
of the Interior under such necessary and proper rules and
regulations as he may prescribe.  Section 12½ of said Sec-
retary's regulations of March 11, 1920 (47 L. D. 446) is as
follows:

"Permits, after being awarded, may be assigned to quali-
fied persons or corporations upon first obtaining consent of
the Secretary of the Interior.  More rights to receive a per-
mit are not assignable."

It is contended—a point not heretofore made—that the
contract with the homesteaders is void under these pro-
visions, as being against public policy.  We do not see the
force of that contention.  It is also, for the first time, fur-
ther urged that the contracts with the homesteaders are, not
by reason of the foregoing provisions, enforceable in an ac-
tion for specific performance, and we are cited to Hardy
v. Deskins 95 Okla. 108; 215 Pac. 738; Rogers v. Maloney
85 Ore. 61, 165 Pac. 367; Wellsville Oil Co. v. Miller, 243
U. S. 6, 37 Sup. Ct. 362 61 L. Ed. 559.  Assuming that to
be the law, and aside from the fact that the contracts with
the homesteaders contemplate the possibility that the Act
of Congress might not make any provision for assignment,
and assuming further without deciding, that appellants

would be responsible for non-compliance by the homestead-
ers with their contracts, are we in this action to presume
that the homesteaders, who agreed to assign their permit
and to do everything necessary to be done by them in order
to vest in respondent the right to take the oil and gas from
said land, will violate their contract? Should we not rath-
er, until the contrary appears, presume, as we did in the
original opinion, that the homesteaders will do as they
agreed to do? We think so. The regulation of the Sec-
retary of the Interior above quoted seems to contemplate
that the permit is assignable to any qualified party. We
cannot, we think, presume that the respondent is not such
qualified party; but should, we think, presume it to be
qualified in the absence of a showing to the contrary. 22
C. J. 145, Sec. 78; nor could respondent voluntarily dis-
qualify itself to the damage of appellants. We do not de-
cide whether, notwithstanding that appellant is a qualified
party, the Secretary of the Interior may arbitrarily with-
hold his consent to an assignment of the permit. If he has
such power, it does not appear that he has exercised it, and
we are inclined to the opinion that until at least the con-
trary appears, we should presume that he will act reason-
ably and consent to the assignment if respondent shows
itself qualified.

4. It is suggested that we have made statements in the
original opinion as to extraneous facts which are unwar-
ranted. We simply decided that the demurrer should have
been overruled, and in arriving at that conclusion only con-
sidered facts as they appeared from the petition, and made
certain inferences by way of argument, which we deemed
reasonable to be made in the absence of facts, appearing of
record, showing the contrary. Nothing in the opinion
should, of course, be construed as deciding anything not ap-
pearing of record or to prevent the lower court, upon the
trial of the case, from receiving competent and relevant
proof to show the situation of the parties, the nature of the
subject matter, and the surrounding circumstances of the

464. PAC.-WYO. OIL CO. v. CARTER OIL CO. [31 WYO.

contract. We do not, however, decide what proof is competent or relevant.

The petition for rehearing must be denied.

POTTER, Ch. J., and KIMBALL, J., concur.

NOTE—See Headnotes (1) 27 Cyc. p. 624 (1926 Anno); (2) 27 Cyc. p. 728; (3) 27 Cyc. p. 624 (1926 Anno); (4) 27 Cyc. p. 624 (1926 Anno); (5) 31 Cyc. p. 80; (6) 22 C. J. p. 145; 31 Cyc. p. 80.