# PACIFIC-WYOMING OIL CO., ET AL. v. CARTER OIL CO.

(No. 1560; May 28, 1929; 277 Pac. 807)
(Rehearing denied June 18, 1929)

394

From the judgment plaintiffs appeal, and defendant cross appeals. Rehearing denied without opinion June 18, 1929.

For the appellant and cross-respondent, there was a brief by *Fenimore Chatterton* of Cheyenne, and *F. A. Williams* of Denver, and oral argument by *Mr. Chatterton* and *Mr. Williams*.

For the respondent and cross appellant there was a brief by *James A. Veasey* of Tulsa, Okla., and *Hagens and Murane* of Casper, and oral argument by *C. D. Murane.*

*Fenimore Chatterton* and *F. A. Williams* in reply.

BLUME, Chief Justice.

The Pacific-Wyoming Oil Company and Ida S. Jordan, plaintiffs, recovered a judgment against the Carter Oil Company for the sum of $8,444.23. Both parties have ap-

pealed from this judgment. The Carter Oil Company will be referred to herein as the respondent and the other parties as appellants.

This is the third appeal in this case. On the first appeal we held that the petition in the case stated facts sufficient to constitute a cause of action. 31 Wyo. 314, 226 Pac. 193, 31 Wyo. 452, 228 Pac. 284. On the second appeal we held that the respondent was liable for the extra bonus of $32.50 per acre for one lease and one lease only, if it should be shown that the lands involved in the case were on the same producing oil structure as existing or as might be found by drilling in the future, whether already designated by the Secretary of the Interior or not. We, however, declined to decide whether the liability existed for an extra bonus as to 160 acres or as to 320 acres. 37 Wyo. 453, 263 Pac. 960; opinion on rehearing, 267 Pac. 85. Details of the facts in the case are set out in the opinions mentioned, and we shall in this opinion only notice such additional facts as may be deemed advisable.

1. Upon the trial of the case the undisputed testimony showed that the three homesteads involved in this action are upon the same producing geological oil structure in the sense stated in our opinion on the last appeal, independent, or at least outside, of a structure as defined by the Secretary of the Interior, if we accept the certificate of the General Land Office sought to be introduced in evidence but rejected by the court. Counsel for the appellants challenge this conclusion because the testimony also showed that the homesteads are in fact on the same structure which now contains producing wells. But that, in our opinion, does not alter the situation, and we think, accordingly, that the limitation of Section 27 of the Leasing Act (41 Stat. at L. 437-451; see 30 U. S. C. A., Sec. 184), mentioned in the opinion on the last appeal, applies. Hence, too, the rejection of the certificate as evidence was without prejudice, but we shall mention the matter a little later.

2. The only sections of the Leasing Act above mentioned which seem to have any particular bearing in this case are Sections 14 and 20 (30 U. S. C. A., Secs. 223 and 229). The former section reads as follows:

"Sec. 14. That upon establishing to the satisfaction of the Secretary of the Interior that valuable deposits of oil or gas have been discovered within the limits of the land embraced in any permit, the permittee shall be entitled to a lease for one-fourth of the land embraced in the prospecting permit: *Provided,* That the permittee shall be granted a lease for as much as one hundred and sixty acres of said lands, if there be that number of acres within the permit. The area to be selected by the permittee shall be in compact form and, if surveyed, to be described by the legal subdivisions of the public-land surveys; if unsurveyed, to be surveyed by the Government at the expense of the applicant for lease in accordance with rules and regulations to be prescribed by the Secretary of the Interior, and the lands leased shall be conformed to and taken in accordance with the legal subdivisions of such surveys; deposits made to cover expense of surveys shall be deemed appropriated for that purpose, and any excess deposits may be repaid to the person or persons making such deposit or their legal representatives. Such leases shall be for a term of twenty years upon a royalty of 5 per centum in amount or value of the production and the annual payment in advance of a rental of $1 per acre, the rental paid for any one year to be credited against the royalties as they accrue for that year, with the right of renewal as prescribed in Section 17 hereof. The permittee shall also be entitled to a preference right to a lease for the remainder of the land in his prospecting permit at a royalty of not less than 12½ per centum in amount or value of the production, and under such other conditions as are fixed for oil or gas leases in this act, the royalty to be determined by competitive bidding or fixed by such other method as the Secretary may by regulations prescribe: *Provided,* That the Secretary shall have the right to reject any or all bids."

Section 20 reads as follows:

"Sec. 20. In the case of lands *bona fide* entered as agricultural and not withdrawn or classified as mineral at the

time of entry, but not including lands claimed under any railroad grant, the entryman or patentee, or assigns, where assignment was made prior to January 1, 1918, if the entry has been patented with the mineral right reserved, shall be entitled to a preference right to a permit and to a lease, as herein provided, in case of discovery; and within an area not greater than a township such entryman and patentees or assigns holding restricted patents may combine their holdings, not to exceed two thousand five hundred and sixty acres, for the purpose of making joint application. Leases executed under this section and embracing only lands so entered shall provide for the payment of a royalty of not less than 12½ per centum as to such areas within the permit as may not be included within the discovery lease to which the permittee is entitled under Section 14 hereof.''

Counsel for the respondents, while still insisting upon their total non-liability herein upon the grounds urged on the former appeal, now insist that none of the homesteaders would, under the evidence in this case, have been entitled either to a permit or to a lease, for the reason that the homesteads in question were located upon a producing structure. We cannot consider the point here for two reasons: First, it is raised too late; the question of partial liability was definitely settled on the last appeal; Second, because it must necessarily be based, if it has any merit—which we do not think it has—upon the assumption, not that they are located upon what might be the same producing structure but upon the assumption that they are on the same producing structure as already defined and determined by the Secretary of the Interior, for no permit would have been refused by him to a party entitled thereto for lands otherwise situated. According to the evidence offered by the parties—and there is nothing in the case showing the contrary—the homesteads in question here are outside of such structure as so defined, and hence, were we to consider the point now urged, the rejection of the offered evidence would have to be considered as reversible error. In the view we take of the case, however, the rejection thereof, as already stated, was without prejudice, but we might add

that if we deemed the point at all material, we should, under the evidence and as an alternative for reversal of the case, consider it as an established fact that the homesteads in question are not on a producing structure as defined by the Secretary of the Interior.

3. We come, then, to the only point which we are called upon to settle on this appeal, namely, whether the respondent herein is liable for the extra bonus for 160 acres as held by the trial court, or for the extra bonus for 320 acres. Counsel for the respondent contend that it is not in any event liable for more than the smaller amount. No good reason, however, is advanced by them for this position except in connection with the contention already mentioned, that since the homesteaders were not entitled to any permit or lease whatever, no opportunity to acquire a lease existed—a point, as stated, which is not now before us—and counsel practically admitted on the former appeal that if the respondent is liable for any amount and if the principle applied in the case of Matt Mechaley, 51 L. D. 413, is correct, then it is liable for the extra bonus for the 320 acres of land. In the brief for rehearing, in connection with the former appeal, the point was mooted more than insisted upon, that two leases are issued to a homesteader under Section 14 supra, one a so-called "discovery lease" at a 5% royalty and another for the remaining land at a higher rental, and that while a homesteader, because of equities in his favor, might be entitled to two leases without reference to the limitations contained in Section 27 supra, an assignee would not be entitled thereto and would be limited to one lease of not more than 160 acres. The point is not mentioned on the present appeal, but without reference to that, we do not think that the argument is good. Sections 14 and 27, supra, must be construed *pari passu*. The former applies not only to homesteaders who are entitled to preference under Section 20 supra, but to others as well who have made a discovery. Assignments to qualified parties are not forbidden, but expressly recognized under the rules.

The assignee would be the permittee mentioned in Section 14 of the Act and would, we think, be entitled to the rights granted to the original permittee under that section. Now, if in fact *two* leases are contemplated under Section 14, then clearly Congress could not have had these leases in mind when it enacted Section 27 of the Act, and these, accordingly, must be considered as excepted from the provisions of the latter section. The probabilities, however, are that Section 14 should be construed as referring to one lease for the land embraced in a permit and issued to the permittee, a part of such lease providing for a lower and part of it providing for a higher royalty—except that, if the rule of the Matt Mechaley case, supra, is sound, one lease may, under some circumstances, be issued, all bearing a royalty higher than 5%.

Now, the respondent contracted for an opportunity to obtain the right to extract oil and gas from the lands involved herein for as long as oil and gas might be found in paying quantities. We have heretofore held that such opportunity existed as to 160 acres, namely, as to one so-called "discovery lease" under Section 14, supra. After most careful consideration, we are unable, in view of the rules and regulations of the Secretary of the Interior, to hold that the opportunity was so confined and was not also extended to 320 acres—that is, to say, to the land of one of the homesteaders. The term "opportunity," as used in the contract in this case, is broad and seems to contemplate that whenever in the future the occasion should present itself to obtain the right contracted for, then the liability should arise. And that, under our holding, depended upon whether or not, provided the respondent had carried out its contract, it would, subsequent to discovery, have obtained a lease. Under subdivision 5 of Order No. 338 of the Secretary of the Interior, dated March 20, 1929, it is provided that lands not within the "discovery lease" under Section 14 supra (that is to say, lands in excess of 160 acres) "will not be leased unless such action is required in the public interest." But

that order was issued nine years after the enactment of the leasing act and the making of the rules and regulations pursuant thereto—in other words, nine years after the opportunity mentioned in the contract in question first presented itself. During all of this time the following rule and regulation of the Secretary of the Interior, made pursuant to the power vested in him by the Leasing Act, was in force:

"Reward for Discovery. Upon establishing to the satisfaction of the Secretary of the Interior that valuable deposits of oil or gas have been discovered within the limits of the land embraced in the permit, within the period of the permit or extension thereof, the permittee is entitled (a) to a lease of one-fourth of the land included in the permit, on a royalty of 5 per cent, or for at least 160 acres if there be that area in the permit; (b) to a preference right to a lease for the remainder of the land covered by his permit at such royalty as may be fixed by the Secretary of the Interior not less than $12\frac{1}{2}$ per cent in amount or value of the production, nor more than the royalties fixed for leases under Section 18 of the act (Sec. 19, Par. c, of these regulations), except that on that portion of the average production exceeding 200 barrels per day per well for the calendar month, the royalties shall be $33\frac{1}{3}$ per cent for oil of 30 degrees Baume or over and 25 per cent for oil of less than 30 degrees Baume."

According to this rule, the respondent, as assignee of the homsteader, had the opportunity to acquire a lease for 320 acres of land without any competitive bidding as mentioned in Section 14 of the Leasing Act, supra, part of that at a royalty of 5% and part of it at a higher royalty, the minimum and maximum of which was fixed under the rule. Respondent, under this rule, had the absolute right to acquire a lease to the land outside of the "discovery lease," upon agreement to pay the royalty fixed by the Secretary. The principle announced in the Matt Mechaley case, supra, is, on the whole, in harmony with and partially based on this rule. It evidently goes even further than the rule. The contract in question did not say anything as to the royalty

under a lease or leases contemplated in the contract. And we cannot presume that the royalty fixed by the Secretary of the Interior is unreasonable. Looking backward, accordingly, there can be no question that the opportunity contracted for existed, but even if we look forward, as of March 11, 1920, the time when the foregoing rule was adopted, the situation is not altered, for, as stated, the contract seems to contemplate that liability should arise whenever the occasion should present itself to obtain the right contracted for, and there can be no question that it presented itself as to 320 acres when the rule mentioned above was adopted; nor can it be questioned that it thereafter continued to present itself for a reasonable time, that time being approximately nine years. We are, accordingly, forced to the conclusion that the respondent should be held liable for the extra bonus for 320 acres of land; in other words, accepting the computation made by the trial court, which is not questioned, that the judgment herein should have been for $16,888.46 instead of for $8,444.23. The judgment rendered herein is, accordingly, increased to the former amount and as so increased is affirmed.

In conclusion: The case is here, as stated, on the third appeal, and the questions involved each time, due to lack of precedent, have given us no little trouble, and from that standpoint we do not regret finally parting with the cause. But we realize the fallibility of human judgment. Courts not seldom come to a conclusion which fails to leave the abiding satisfaction that men would like to feel in deciding matters of importance. We may, therefore, be pardoned when we say that we have hopes that the contention of counsel for respondent, to the effect that the case involves a Federal question, is true, so that an opportunity may be given to have our mistakes, if any, corrected.

*Affirmed.*

KIMBALL and RINER, JJ., concur.