In the MATTER of the Petition for Review by SIERRA TRADING POST, INC. of the Award of Unemployment Compensation Benefits to Theresa Hinson:

**Sierra Trading Post, Inc., Appellant (Employer/Petitioner),**

v.

**Theresa Hinson, Appellee (Claimant/Respondent).**

No. 98-35.

Supreme Court of Wyoming.

Feb. 22, 2000.

Representing Appellant: W. Perry Dray, Randall B. Reed, and Gregory C. Dyekman of Dray, Thomson & Dyekman, P.C., Cheyenne, Wyoming.

Representing Appellee: No appearance.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

THOMAS, Justice.

The question for review is whether a worker, whom the employer allowed to start work with the understanding that she must pass a pre-employment drug screening test, is entitled to unemployment benefits when the employment is terminated due to a positive drug test. We hold that she is not. The Unemployment Insurance Commission (Commission) ruled that Theresa Hinson's (Hinson) drug use was not "misconduct connected with

* Retired November 2, 1998.

her work" and she was eligible for benefits. Since Hinson had not satisfied the condition subsequent upon which the continuation of employment depended, we hold that she left her work "voluntarily without good cause attributable directly to [her] employment," and that she was not entitled to receive unemployment benefits. The decision of the Commission is reversed

In the Brief of Appellant, filed by Sierra Trading Post, Inc. (Sierra), the issue that is raised is:

I. The Unemployment Insurance Commission acted arbitrarily, capriciously and not in accordance with the law in allowing claimant's unemployment benefit claim because it required Sierra Trading Post Inc. to prove that claimant actually used marijuana after starting work instead of requiring proof that claimant failed her drug test after starting work.

On September 27, 1996, Sierra offered Hinson a job as a packer in its warehouse. Sierra allowed Hinson to begin work on September 30, 1996, but according to its Drug and Alcohol Policy, what Sierra termed "an offer of employment" was conditioned upon Hinson passing a pre-placement drug test. Hinson executed a form agreeing to the pre-placement drug testing, and acknowledged a provision in the Drug and Alcohol Policy which reads:

> For business reasons as determined solely at the discretion of Sierra Trading Post, Inc. management an applicant may be permitted to commence working, on a conditional basis prior to receipt of the results of pre-placement testing by Sierra Trading Post, Inc. The applicant must first sign a consent to conditional employment. The conditional employment of such an applicant who tests positive for drugs shall be terminated immediately.

The Commission included in its additional findings of fact a finding that Hinson was tested later than she normally would have been under the Drug and Alcohol Policy because she was involved in a car accident and her original test was rescheduled. The Commission pointed out that normally the employer accomplished the "pre-employment" test within the first two weeks of employment. Instead, Hinson provided a urine sample for testing on October 25, 1996. The results of that test were received by Sierra on October 30, 1996, and the test was positive for marijuana. On October 31, 1996, Sierra discharged Hinson in accordance with the company policy.

Hinson then applied for, and was awarded, unemployment benefits under the Wyoming Employment Security Law, Wyo. Stat. Ann. §§ 27–3–101 through 27–3–705 (Lexis 1999). On July 9, 1997, Sierra was advised that Hinson had been found eligible for unemployment benefits and that a pro rata share would be potentially chargeable to Sierra's account unless a protest was filed within fifteen days. Sierra did protest, and on July 23, 1997, it was advised that the benefits were chargeable to its account in a Notice to Employer of Action on Claim. Again, Sierra was advised of a fifteen-day period in which to file an appeal, and Sierra did appeal. The matter was assigned to an appeals examiner, and on September 8, 1997, following a telephonic hearing, the appeals examiner reaffirmed the determination that Sierra's unemployment insurance account was chargeable with a proportionate share of Hinson's benefits.

Sierra was advised of an opportunity to file an Appeal and Petition for Review to the Commission.

Sierra did appeal, and on October 14, 1997, the decision of the Commission was entered. The essence of its decision is found in the following language:

> Since the employer's policy allows it, in its sole discretion, to put an applicant to work prior to them submitting to a "pre-placement" drug and alcohol test, the employer, for employment security law purposes, also has the burden of proving that the claimant's subsequent failure of the "pre-placement" test was misconduct connected with the claimant's work.

The Commission found that Sierra had failed to meet that burden of proof. This rationale differed from that of the appeals examiner who had concluded that Sierra failed to follow its policy regarding "pre-employment"

drug testing, and, therefore, had failed to demonstrate misconduct within the meaning of the statutes.

Sierra filed a petition for judicial review in the district court. The district court then certified the case to this Court pursuant to W.R.A.P. 12.09. The only appearance in this Court was on behalf of Sierra.

■ In a matter certified to this Court by the district court pursuant to W.R.A.P. 12.09, our review is circumscribed by our usual standards for reviewing the decision of an administrative agency. *General Chemical Corp. v. Unemployment Ins. Com'n, Div. of Unemployment Ins., Dept. of Employment,* 906 P.2d 380, 381 (Wyo.1995); *Safety Medical Services, Inc. v. Employment Sec. Com'n of Wyoming,* 724 P.2d 468, 471–72 (Wyo. 1986). We will accord considerable deference to findings of fact by the agency, which will be disturbed only if they are contrary to the overwhelming weight of the evidence upon review of the entire record. *Wyoming Steel & Fab, Inc. v. Robles,* 882 P.2d 873, 875 (Wyo.1994). We treat differently, however, an agency's conclusions of law which will be affirmed only if they are in accord with the law. *Matter of Corman,* 909 P.2d 966, 970 (Wyo.1996); *Employment Sec. Com'n of Wyoming v. Western Gas Processors, Ltd.,* 786 P.2d 866, 871 (Wyo.1990). We correct any error that the administrative agency has made in its interpretation or application of the law. *Matter of Gneiting,* 897 P.2d 1306, 1308 (Wyo.1995); *Western Gas Processors, Ltd.,* 786 P.2d at 871.

The task before us in this case is capsulized by this language in *General Chemical Corp.,* 906 P.2d at 381:

The facts in this case are not in dispute and the only issue before us is a question of law. Thus, the Commission's decision will be reversed if it constitutes an abuse of discretion or if it is not in accordance with the law. *Devous v. Wyoming State Bd. of Medical Examiners,* 845 P.2d 408, 414 (Wyo.1993).

We are satisfied that the Commission in this instance did not address the appropriate law relating to employment contracts. The Commission assumed that Hinson was an employee of Sierra for purposes of the application of the Wyoming Employment Security Law.

■ It is clear that in Wyoming, an employment relationship occurs by contract. *Brodie v. General Chemical Corp.,* 934 P.2d 1263, 1265 (Wyo.1997); *Loghry v. Unicover Corp.,* 927 P.2d 706, 712 (Wyo.1996). The rules relating to employment contracts were summarized in *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 216 (Wyo.1994):

Wyoming has long recognized that the hiring of an employee by an employer occurs by contract. *See, e.g., Casper Nat. Bank v. Curry,* 51 Wyo. 284, 65 P.2d 1116, 1120 (1937). When reviewing the terms of a contract of employment, we apply our usual rules of contract interpretation. *McDonald v. Mobil Coal Producing, Inc.,* 820 P.2d 986, 988 (Wyo.1991) (*McDonald II*). Whether a contract is ambiguous is a question of law for the reviewing court. *Prudential Preferred Properties [v. J and J Ventures, Inc.],* 859 P.2d [1267,] at 1271 [ (Wyo.1993) ].

We must look to the law of contracts in arriving at a determination as to whether Hinson and Sierra entered into an employment contract and, if so, how that contract is to be construed.

■ On the record brought forward from the Commission, there can be no question that the material aspect of the employment contract between Hinson and Sierra was memorialized in writing, and it is not ambiguous. The Commission had before it, and considered and quoted from, Sierra's Drug and Alcohol Policy. The critical language reads:

For business reasons as determined solely at the discretion of Sierra Trading Post, Inc. management an applicant may be permitted to commence working, on a conditional basis prior to receipt of the results of pre-placement testing by Sierra Trading Post, Inc. The applicant must first sign a consent to conditional employment. The conditional employment of such an applicant who tests positive for drugs shall be terminated immediately.

This language is clear in providing for the termination of the employment upon the oc-

currence of the condition, and Hinson agreed to that.

In *Hillman v. Raymond,* 733 P.2d 605, 606 (Wyo.1987), we spoke to the concept of a condition subsequent in this language:

"A condition subsequent is any fact the existence or occurrence of which, by agreement of the parties, operates to discharge a duty of performance after it has become absolute. * * *" Calamari & Perillo, The Law of Contracts, § 11–5, p. 385 (1977).

In *Kindler v. Anderson,* Wyo., 433 P.2d 268, 270–271 (1967), we stated:

"Conditions subsequent are not favored in the law and are to be strictly construed. *J.M. Carey & Brother v. City of Casper,* 66 Wyo. 437, 213 P.2d 263, 268 [1950]. Of course, conditions, like any other provision of a contract, are to be interpreted as the parties must have understood the conditions at the time. The true intention of the parties will control and that is to be ascertained from the language used in the writing as a whole, looking if necessary at the situation of the parties, the subject matter, and the purpose to be served. *Pacific–Wyoming Oil Co. v. Carter Oil Co.,* 31 Wyo. 314, 226 P. 193, 197, rehearing denied 31 Wyo. 452, 228 P. 284."

This approach is the same as that earlier articulated in *Takahashi v. Pepper Tank & Contracting Co.,* 58 Wyo. 330, 131 P.2d 339, 352–53 (1942).

While we have said that the question of whether a contractual provision is a condition precedent or a condition subsequent is one resolved by the intention of the parties, and normally such questions are to be resolved by the trier of fact, *Goodwin v. Upper Crust of Wyoming, Inc.,* 624 P.2d 1192, 1195 (Wyo. 1981), we also have said that when the language of the contract is clear, we need look no further than the four corners of the contract. *Hillman,* 733 P.2d at 607. There is no reason to remand this case to the Commission in order for it to make a finding of fact with respect to the intention of the parties.

We turn then to the application of Wyo. Stat. Ann. § 27–3–504(e)(ii) (Michie 1997), under which the Commission ruled in

this case. The statute provides in pertinent part:

(e) Benefits shall not be charged to an employer's account if:

* * *

(ii) The individual receiving benefits voluntarily leaves work without good cause attributable to employment or was discharged from employment for misconduct in connection with this work[.]

Wyo. Stat. Ann. § 27–3–504(e)(ii). The Commission treated the case as one in which the employer had to satisfy the burden of proving that Hinson's failure of the "pre-placement" test was misconduct in connection with the work. We are satisfied that the case correctly is treated as one in which Hinson voluntarily left work without good cause attributable to the employment. The burden of proof with respect to good cause for quitting work is assigned to Hinson. *Weidner v. Life Care Centers of America,* 893 P.2d 706, 710 (Wyo.1995); *Employment Sec. Com'n of Wyoming v. Bryant,* 704 P.2d 1311, 1317 (Wyo.1985). Hinson neither appeared nor offered any evidence at the hearing before the Commission or the hearing before the appeals examiner.

The final question in this case comes down to a determination as to whether Hinson left work voluntarily without good cause attributable to her employment. We have said:

Defining the meaning of the word "voluntarily" when that term is applied to an employee who leaves work, W.S. 27–3–311(a)(i) (1991) is a matter of law. *Southwest Wyoming Rehabilitation Center v. Employment Sec. Comm'n,* 781 P.2d 918, 921 (Wyo.1989). As used in the WESL, voluntary connotes " '[u]nconstrained by interference; unimpelled by another's influence; spontaneous; acting of oneself * * * [r]esulting from free choice.' " *Shuler v. Virginia Employment Comm'n,* 9 Va.App. 147, 384 S.E.2d 122, 124 (1989) (*quoting* Black's Law Dictionary 1413 (5th ed.1979)). Similar language in other jurisdictions' statutes has been interpreted to require "some manifestation of intent to quit" to show a claimant voluntarily left employment. *Blackwell [v. Review Bd. of Indiana Dep't of Employment and Train-*

*ing Serv.*], 560 N.E.2d [674] at 677 [ (Ind.App.1990) ]; *Monaco v. Unemployment Compensation Bd. of Review,* 523 Pa. 41, 565 A.2d 127, 129 (1989); *[Matter of] Johnson,* 337 N.W.2d [442,] at 447 [ (S.D. 1983) ].

*Casper Iron & Metal, Inc. v. Unemployment Ins. Com'n of Dept. of Employment of State of Wyo.,* 845 P.2d 387, 396 (Wyo.1993). This record not only demonstrates the requisite voluntary conduct by virtue of the contract, but also the requisite manifestation of intention. If an employment contract provided for termination after two years, the Commission surely would not award benefits to the worker who had agreed that the job was encumbered by a condition subsequent, that being the passage of time. This condition subsequent, while different in tenor, has no difference in principle. We hold that, under the circumstances, Hinson voluntarily left her employment with Sierra without good cause attributable to the employment.

■ Were we to take the tack of construing the condition as a condition precedent, the same result would ensue. The statute defines employment in this way:

(a) As used in this act, "employment" means service:

(i) Performed by an employee defined under 26 U.S.C. § 3306(i) including service in interstate commerce, except 26 U.S.C. § 3121(d)(2) does not apply[.]

Wyo. Stat. Ann. § 27–3–104(a)(i) (Lexis 1999). 26 U.S.C. § 3306(i) provides:

(i) **Employee.** For purposes of this chapter, the term "employee" has the meaning assigned to such term by section 3121(d), except that paragraph (4) and subparagraphs (B) and (C) of paragraph (3) shall not apply.

26 U.S.C. § 3121(d) provides, in the part pertinent to this case:

(d) **Employee.** For purposes of this chapter, the term "employee" means-

\* \* \*

(2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee[.]

Hinson's satisfactory drug screen, under this approach, would be a condition precedent to her employment with Sierra.

We discussed a condition precedent in *Mad River Boat Trips, Inc. v. Jackson Hole Whitewater, Inc.,* 803 P.2d 366, 368 (Wyo. 1990) (*Mad River I* ). Mad River Boat Trips, Inc. had sold Jackson Hole Whitewater, Inc. two rafts and two special use permits issued by the Forest Service. *Id.* at 367. A provision was incorporated in the contract that the parties would obtain consent of the Forest Service to the assignment in trust of the permits. The Forest Service refused its consent, and we held that the contract never became effective, due to the failure of the condition. *Mad River I,* 803 P.2d at 368. We said:

A condition precedent is defined as " 'an act or event, other than a lapse of time, which must exist or occur before a duty of immediate performance of a promise arises.' " *Robert W. Anderson Housewrecking and Excavating, Inc. v. Board of Trustees, School District No. 25, Fremont County, Wyoming,* 681 P.2d 1326, 1331 (Wyo.1984) (quoting Calamari & Perillo, *The Law of Contracts* § 11–3 (1977)).

*Mad River I,* 803 P.2d at 368. The condition precedent was enforced in that case despite the fact that the parties had not labeled it as such and both had partially performed. *Id.* at 368.

Applying *Mad River I* to the facts disclosed by this record, we would be forced to conclude that the contract never became effective because the condition which had to exist or occur before performance was required from Sierra did not occur. Applying the law relating to conditions precedent, we would hold that Hinson never was employed by Sierra for purposes of the Wyoming Employment Security Law. Unlike *Mad River I,* in which the condition failed because of the actions of a third party, Hinson, and only Hinson, was responsible for satisfying this condition.

The burden of the failed condition must fall upon Hinson because Sierra stated unambiguously in its Drug and Alcohol Policy that it did not hire applicants who tested positively for drugs. Further, the policy

permitted a subsequent application for employment even if the test was refused. Hinson could have refrained from drug use until after the test had been accomplished, or she could have refused employment until a time when she could pass the test. Instead, Hinson accepted Sierra's conditional offer, and submitted to the test, certainly with foreknowledge that the result would be positive. Public policy should not permit Hinson to claim the benefits of unemployment insurance in this instance. That result would stand as an invitation for others to accept employment knowing they would fail a preemployment drug test but still would be able to qualify for unemployment benefits.

We are satisfied that the Commission abused the discretion vested in it by not applying the correct principles of law to the undisputed facts. The decision of the Commission, dated October 14, 1997, is reversed.