Bill BRASHEAR, d/b/a B & W
Painting & Wallcovering,
Appellant (Plaintiff),

v.

RICHARDSON CONSTRUCTION, INC.,
a Wyoming corporation, Appellee
(Defendant).

No. 99–325.

Supreme Court of Wyoming.

Aug. 17, 2000.

Representing Appellant: William D. Bagley of Bagley Law Office, Cheyenne, Wyoming.

Representing Appellee: Don W. Riske of Riske & Arnold, P.C., Cheyenne, Wyoming.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL, and KITE, JJ.

KITE, Justice.

Appellant Bill Brashear d/b/a B & W Painting & Wallcovering (the subcontractor) filed a complaint against Appellee Richardson Construction, Inc. (the general contractor), seeking payment on a subcontract for services (the contract) rendered including painting and wallpapering. The contract provided for liquidated damages for every day of delay caused by the subcontractor after April 7, 1998. The entire project had an estimated completion date of April 8, 1998. The subcontractor was not allowed to begin work until April 13, 1998, six days after the completion deadline in the contract. The general contractor counterclaimed, seeking liquidated damages for delays allegedly

caused by the subcontractor and recovery of additional costs to the general contractor resulting from work it performed to correct and complete the subcontractor's work. After trial, the district court awarded the general contractor $14,858.86 for the costs incurred to cure the defects caused by the subcontractor and $17,550 in liquidated damages. These awards were set off against the $30,601 the district court found that the general contractor owed for work performed under the contract resulting in a judgment against the subcontractor of $1,807.86. The subcontractor appeals to this Court. In his brief, he limited the appeal to the issue of the liquidated damages award. We affirm the district court's judgment as to costs, reverse the award of liquidated damages, and remand.

### ISSUES

The subcontractor presents the following issue:

Whether the Trial Court erred in assessing liquidated damages against Appellant, when the contractual provision regarding liquidated damages did not apply to the factual situation found by the Court.

The general contractor restates the issue as:

ISSUE I: Whether the District Court erred in awarding Appellee a set-off from the claimed contract amount for liquidated damages.

IA. The Liquidated Damages provision of the Subcontract does not contain a condition precedent, the failure of which would negate the entire provision.

IB. Appellant failed to claim a right to an extension of time in the manner required by the Subcontract.

IC. Appellant waived the application of the date as a condition precedent by his actions[.]

### FACTS

The subcontractor and the general contractor entered into a contract on July 31, 1997, for the performance of certain services on the remodeling of a church in Sidney, Nebraska. Section E of the contract specifically provided:

In addition to Contractor's other remedies set forth herein, in the event that contractor is delayed in completing the project *by April 7, 1998* due to actions or inaction[ ]s of Subcontractor, Subcontractor shall be liable to Contractor for Liquidated Damages of Three Hundred Twenty[-]Five Dollars ($325.00) per calendar day of such delay.

(Emphasis added.) On August 5, 1997, the subcontractor acknowledged receipt of a Notice to Proceed dated July 31, 1997. However, in November and December 1997, the project was delayed due to a number of different causes, none of which were under the control of the subcontractor. Initially, the subcontractor was scheduled to begin work February 1, 1998. The start date was delayed by weather and change orders unrelated to the subcontractor. It was undisputed that the subcontractor did not begin work until April 13, 1998. At that time, sheetrockers were still not finished with their work, and they and other trades limited the subcontractor's efforts. On June 15, 1998, the architect for the owner certified that the subcontractor's work was eighty percent completed, and the owner paid the general contractor for eighty percent of the subcontractor's work. In late June, the architect noticed certain problems with the subcontractor's installation of the sisal wall covering (the sisal). There was a dispute concerning the notification of the subcontractor of the problems. The owner, on or about June 30, 1998, gave written notice of the rejection of the sisal installation and a demand to cure. In late June, the subcontractor demanded payment for the work completed, but the general contractor withheld payment pending correction of the noted problems with the sisal installation. The owner's architect, the general contractor, and the subcontractor negotiated concerning how the defect should be cured. The subcontractor wanted to try to correct the problems without removing the sisal, but the architect insisted that removal and reinstallation consistent with the manufacturer's instructions were required. After the end of June, the subcontractor performed no significant work. On August 10, 1998, the general contractor terminated the contract

and removed and reinstalled the sisal. The subcontractor does not contest the judgment against it for the costs of that additional work. The project was accepted by the owner as complete on October 1, 1998.

The owner assessed liquidated damages to the general contractor pursuant to the general contract for more than 118 days of delay in the project completion.[1] The general contract was not included in the record, and, therefore, the terms and conditions of the liquidated damages charged by the owner against the general contractor cannot be ascertained. The general contractor allocated fifty-four days of delay to this subcontractor based upon what the general contractor considered was a "reasonable" basis with 'the remaining days of delay being allocated to the general contractor and other subcontractors. The record contains no evidence concerning the basis for that allocation.

The subcontractor testified that he understood he was undertaking the work under the contract even though he was not allowed to begin work until a later date than was anticipated when the contract was signed. It appears from the testimony of the architect that the general contractor may have received an extension of the completion date from the owner by approval of a change order. A handwritten notation on the Final Acceptance Certification indicates that the general contractor may have received an extension of the completion date from April 8, 1998, to June 14, 1998, from the owner. However, the record does not contain the change order or orders which affected any such extension. No request for extension of time was made by the subcontractor or the general contractor of one another. The record reflects no change order or orders affecting an extension of the April 7, 1998, deadline which triggered liquidated damages in the contract between the general contractor and the subcontractor.

Before the controversy developed, the subcontractor was paid $2,524.50 for the sisal

material costs he incurred. No further payments were made to the subcontractor.

## STANDARD OF REVIEW

■ Resolution of this matter is governed by interpretation of the terms of the contract. Neither party contends the contract is ambiguous. Because the interpretation of a contract is purely a question of law, this Court conducts a *de novo* review of the district court's conclusions. *Fremont Homes, Inc. v. Elmer,* 974 P.2d 952, 955–56 (Wyo. 1999); *Anderson v. Bommer,* 926 P.2d 959, 961 (Wyo.1996); *see also Moncrief v. Louisiana Land and Exploration Company,* 861 P.2d 516, 524 (Wyo.1993).

## DISCUSSION

■ The interpretation of an unambiguous contract is governed by its plain language. This Court recently noted in *Page v. Mountain West Farm Bureau Mutual Insurance Company,* 2 P.3d 506, 508 (Wyo.2000) (*quoting Arnold v. Mountain West Farm Bureau Mutual Insurance Company, Inc.,* 707 P.2d 161, 166 (Wyo.1985)), as follows:

"If a contract is clear on its face, we must assume it reflects the intent of the parties. *Schacht v. First Wyoming Bank, N.A.-Rawlins,* Wyo., 620 P.2d 561 (1980). We are not free to rewrite contracts under the guise of interpretation. *Adobe Oil & Gas Corp. v. Getter Trucking, Inc.,* Wyo., 676 P.2d 560 (1984). So long as there is no ambiguity, we are bound to apply the contract as it is written. *Rouse v. Munroe,* Wyo., 658 P.2d 74 (1983)."

This Court also held in *Sierra Trading Post, Inc. v. Hinson,* 996 P.2d 1144, 1148 (Wyo. 2000) (emphasis added) as follows:

While we have said that the question of whether a contractual provision is a *condition precedent* or a condition subsequent is one resolved by the intention of the parties, and normally such questions are to be resolved by the trier of fact, *Goodwin v. Upper Crust of Wyoming, Inc.,* 624 P.2d

---

1. The owner charged the general contractor for 118 days at $225 per day for a total of $26,550. In addition, the owner charged the general contractor for eighty-four days at $70 per day, which was discounted to forty-two days, for a total of $2,940. The reason for the discount is not apparent in the record.

1192, 1195 (Wyo.1981), we also have said that when the language of the contract is clear, we need look no further than the four corners of the contract. *Hillman[ v. Raymond],* 733 P.2d [605,] 607 [ (Wyo. 1987) ].

■ The plain language of this contract provides for liquidated damages only if the subcontractor delays the completion of the project **by April 7, 1998.** "[I]n the event that contractor is delayed in completing the project by April 7, 1998 *due to actions or inaction[ ]s of Subcontractor*, Subcontractor shall be liable to Contractor for Liquidated Damages." (Emphasis added.) The record contains no evidence, and not even a claim, that the project was delayed past April 7, 1998, by the actions or inactions of this subcontractor. The plain language of this contract does not provide authority for the award of liquidated damages unless the subcontractor caused a delay of the project past April 7, 1998. The district court erred when it awarded liquidated damages beyond those contemplated in the contract.

> The court may look to the surrounding circumstances, the subject matter, and the purpose of the contract to ascertain the intent of the parties at the time the agreement was made. However, the context cannot be invoked to contradict the clear meaning of the language used, and extraneous circumstances do not justify inserting a provision contrary to the express terms of the contract; the court cannot make a contract for the parties.

*Polo Ranch Company v. City of Cheyenne,* 969 P.2d 132, 136–37 (Wyo.1998) (citations omitted); *see also Examination Management Services, Inc. v. Kirschbaum,* 927 P.2d 686, 690 (Wyo.1996).

■ The general contractor argued that the subcontractor did not seek an extension of time. However, neither did the general contractor. If the general contractor had wanted a liquidated damages provision that would apply after the date specified in the contract, it certainly could have provided one because it drafted the contract. Liquidated damages can be drafted to apply whenever work is begun and a specific amount of time is allowed for the work to be completed.[2] *Keith v. Burzynski,* 621 P.2d 247, 249 (Wyo. 1980). This contract provided for change orders and extensions of time. However, neither party used those remedies to alter the explicit terms of the contract when the April 7, 1998, date passed. Consequently, only the explicit terms of the written contract will apply. *Colorado Interstate Gas Company, v. Natural Gas Pipeline Company of America,* 842 P.2d 1067, 1070 (Wyo.1992); *see also Quin Blair Enterprises, Inc. v. Julien Construction Company,* 597 P.2d 945, 951 (Wyo.1979).

The general contractor argues it is evident from the subcontractor's testimony that he understood the contract applied even though work was commenced later than contemplated. The general contractor asserts this testimony supports its argument that liquidated damages apply whenever a delay is caused. However, the subcontractor's testimony in no way undermines the conclusion that the express terms of the contract did not authorize liquidated damages where the project was delayed long after April 7, 1998, **by persons other than the subcontractor.**

The general contractor asks this Court to rewrite the contract to provide that liquidated damages apply whenever the subcontractor delays completion of the project. As we noted in *Snyder v. Lovercheck,* 992 P.2d 1079, 1089 (Wyo.1999):

> Courts are not free to rewrite contracts under the guise of interpretation where the contractual provisions are clear and unambiguous. *Klutznick v. Thulin,* 814

**2.** *Keith v. Burzynski,* 621 P.2d 247, 249 (Wyo. 1980) (*quoting* 5 Samuel Williston & Walter H.E. Jaeger, A Treatise on the Law of Contracts § 789 at 765–66 (3d ed.1961)), provides as follows:
"In building contracts, there is often inserted a provision giving the architect power to certify an extension of time in certain cases, by virtue of which the effect of a delay caused by the owner operates merely as an extension of the time for performance, and a new time is substituted for the old. In that event though the owner causes delay the builder is liable in liquidated damages, but the period of delay caused by the owner is deducted from the total delay. Unless the contract contains such a provision the delay due to each party will not generally be apportioned."

P.2d 1267, 1270 (Wyo.1991). "Accordingly, in private disputes, a court must enforce the contract as drafted by the parties and may not relieve a contracting party from anticipated or actual difficulties undertaken pursuant to the contract, unless the contract is voidable on grounds such as mistake, fraud or unconscionability." *Holly Hill Holdings v. Lowman*, 226 Conn. 748, 628 A.2d 1298, 1302 (1993) (citing 1 Restatement (Second), Contracts §§ 154, 159, and vol. 2, § 208 (1981)). Moreover, "[o]ne who signs a contract generally cannot avoid it on the ground that he did not attend to its terms, or did not read it, or that he took someone's word as to what it contained." *First State Bank of Wheatland v. American Nat. Bank*, 808 P.2d 804, 806 (Wyo.1991).

Neither is the general contractor's argument persuasive that, by commencing work after the April 7, 1998, date, the subcontractor waived his right to claim that liquidated damages would only apply pursuant to the terms of the contract. In fact, the opposite is true. The general contractor waived its right to rely on the liquidated damages provision when it allowed the subcontractor to commence work after April 7, 1998—the contractually specified liquidated damages date—without requiring a change order or amendment to the contract.

The award of liquidated damages was based upon the allocation of all of the days of delay after the contract was terminated until the project was accepted as complete by the owner.[3] No provision in the contract provided for such an allocation of damages. Absent such a contract provision, the district court inappropriately developed its own formula to calculate liquidated damages to be assessed against the subcontractor. *Snyder*, 992 P.2d at 1089.

We affirm that portion of the district court's judgment which awarded the general contractor $14,858.86 for the costs incurred to cure the defects caused by the subcontractor, reverse that portion of the district court's judgment which awarded the general

contractor liquidated damages in the amount of $17,550, and remand the case for a revision of the judgment consistent with this opinion.

---

3. August 10, 1998, was the date the contract was terminated, and October 1, 1998, was the date the project was deemed complete by the owner.