In re Anthony Carl SCHOTT, also known as Tony Schott, and Michelle Dawn Schott, also known as Michelle Schott, also known as Michelle Dawn Graham, also known as Michelle Dawn Weik, Debtors.

Anthony Carl Schott and Michelle Dawn Schott, Appellants,

v.

WyHy Federal Credit Union, Appellee.

BAP No. WY–02–019.
Bankruptcy No. 98–10268.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Aug. 15, 2002.

Submitted on the briefs:*

Stephen R. Winship of Winship & Winship, P.C., Casper, WY, for Appellants.

Mark E. Macy of Macy Law Office, P.C., Cheyenne, WY, for Appellee.

Before McFEELEY, Chief Judge, PUSATERI, and NUGENT, Bankruptcy Judges.

---

\* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

## OPINION

McFEELEY, Bankruptcy Judge.

Appellant/Debtors Anthony Carl Schott and Michelle Dawn Schott ("Debtors") appeal an Order entered by the United States Bankruptcy Court for the District of Wyoming that denied their Motion for Contempt ("Motion"). The Debtors argue that the bankruptcy court erred when it held that the creditor WyHy Federal Credit Union ("WyHy") with whom the Debtors reaffirmed a $14,431.94 debt did not violate § 524(a)(2) when it collected interest on that debt as well as premiums on the declining term life insurance that the Debtors requested when they entered into the original promissory note. Alternatively, the Debtors argue that the bankruptcy court erred when it did not find that WyHy violated their discharge by debiting monies other than their bimonthly payment from their account. For the reasons stated below, on the first issue we affirm; on the second issue we remand for additional findings by the bankruptcy court.

### Appellate Jurisdiction

The Bankruptcy Appellate Panel has jurisdiction over this appeal. The bankruptcy court's judgment disposed of the adversary proceeding on the merits and is a final order subject to appeal under 28 U.S.C. § 158(a)(1). *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (defining final order). The Debtors timely filed their notice of appeal pursuant to Federal Rule of Bankruptcy Procedure 8002. All parties have consented to this Court's jurisdiction by failing to elect to have the appeal heard by the United States District

Court for the District of Wyoming. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001.

### Standard of Review

"For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable de novo), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); see Fed. R. Bankr.P. 8013; *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th Cir. 1996).

■ A bankruptcy court's decision on whether a contract is ambiguous is reviewed de novo. *In re K.D. Co., Inc.*, 254 B.R. 480, 488 (10th Cir. BAP 2000).

### Background

On June 13, 1996, the Debtors obtained a nonpurchase money loan from WyHy in the amount of $20,130.37 at an annual interest rate of 9.89%. The loan was secured by two automobiles. Pursuant to the signed Note ("Note"), the loan was a 130–payment loan with semi-monthly payments due in the amount of $197.62 maturing on September 7, 2001. The payments were to be made by automatic withdrawal. After the preparation of the Note with the foregoing terms, the Debtors elected declining term life insurance ("term life insurance") with an estimated premium of $658.08 over the term of the loan. The addition of the term life insurance was made on the Note in handwriting. The addition of the term life insurance did not increase the amount of the semi-monthly payments, but did increase the number of the payments from 130 to 140 and so extended the payoff date.

Neither of these changes were made on the Note.

On July 27, 1998, the Debtors filed a voluntary Chapter 7 petition. They were represented by counsel at all times through the bankruptcy process. Prior to the time Debtors filed their bankruptcy petition, they had made approximately fifty payments on this loan. The Debtors scheduled a debt owed to WyHy in the amount of $15,000. On August 14, 1998, WyHy filed a proof of claim stating that the amount of the claim on the date of filing was $14,431.94.

On August 28, 1998, the parties filed an agreement pursuant to 11 U.S.C. § 524(c), in which the Debtors voluntarily reaffirmed the debt owed to WyHy. This agreement was memorialized on a form provided per the local rules of the bankruptcy court and entitled Voluntary Agreement Between Debtor(s) and Creditor ("Reaffirmation Agreement"). The Reaffirmation Agreement identifies the amount of the reaffirmed debt as $14,431.94. It further identifies a term of 90 payments and a "monthly payment" of $197.38. With respect to this latter term, the Reaffirmation Agreement was in conflict with the Note as well as the parties' practice because the Debtors actually were making and continued to make semi-monthly payments. The 90 semi-monthly payments extended the payout to May 2002.

The Reaffirmation Agreement also provided that "Separate Agreements or other documents signed by the debtor(s)" existed. Those documents were not specifically identified or attached. However, the only other documents existing with respect to this loan [1] were the Note documents.

---

**1.** There is evidence that the Debtors had other loans with this bank, namely a signature loan, and a credit card.

The Debtors remained current with the payments called for by the Note and the Reaffirmation Agreement. During the payout term of the Reaffirmation Agreement, WyHy continued to deduct some amount from the semi-monthly payment to make premium payments on the term life insurance.

On July 9, 2001, WyHy sent a letter to the Debtors indicating that a balloon payment of $3,118.94 was due within 60 days. This notice was triggered by the erroneous maturity date on the Note. Some time thereafter, the balloon payment notice was retracted. Two more payments were transferred electronically. Then the Debtors mailed WyHy a check for $23.20, their calculation of the payoff amount of the loan.

In September 2001, WyHy sent the Debtors two past due notices. According to the WyHy's records, the amount owed by the Debtors on September 12, 2001 was $3,100.05.

On November 29, 2001, the Debtors filed a "Motion to Show Cause and/or Contempt Citation" against WyHy alleging that WyHy had violated their discharge by continuing to charge them for the term life insurance and by charging them interest on the principal balance remaining on the Note.[2] After an evidentiary hearing, the bankruptcy court found that in the absence of any terms to the contrary, the Reaffirmation Agreement incorporated the Note, thereby including interest and the term life insurance.

This appeal timely followed.

### Discussion

In their appeal, the Debtors argue that WyHy violated § 524(a) in one of the following three ways: a) the Reaffirmation Agreement was ambiguous and therefore unenforceable, or alternatively, the term life insurance obligation and the interest rate of 9.89% on the principal were not reaffirmed; b) the Reaffirmation Agreement was void because the Note was not attached to it; c) WyHy made an additional unexplained monthly debit from their account.

 Unless one of the exceptions enumerated in 11 U.S.C. § 523 applies, a Chapter 7 debtor receiving a discharge under 11 U.S.C. § 727[3] is relieved of all in personam liability for debt that arose before the date of the order for relief. 11 U.S.C. § 727(b). After a discharge is entered, § 524(a)(2) prohibits creditors from collecting discharged debts. 11 U.S.C. § 524(a)(2).[4] A creditor who attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the discharge order. Cox v. Zale Del., Inc., 239 F.3d 910, 915 (7th Cir.2001). The bank-

---

2. In their Motion before the bankruptcy court the Debtors asserted not only the Claim made here, but also that WyHy's actions and omissions violated the Truth–in–Lending Act ("TILA") and violated the Uniform Commercial Code by not complying with the enforcement provisions of Revised Article 9. The bankruptcy court held that the terms in a reaffirmation agreement cannot be analogized to a TILA Disclosure Statement. Additionally, it found that it lacked subject matter jurisdiction under TILA to determine any remedies for an asserted TILA violation. The bankruptcy court also found that it lacked subject matter jurisdiction to determine the Debtors' UCC claims. Neither of these arguments were further pursued in this appeal.

3. All future statutory references are to Title 11 of the United States Code unless otherwise noted.

4. Section 524(a)(2) provides that a discharge under the bankruptcy code "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ." 11 U.S.C. § 524(a)(2).

ruptcy court has the power to impose civil sanctions on those in contempt of its orders. *See In re Skinner,* 917 F.2d 444, 448 (10th Cir.1990) (finding that 11 U.S.C. § 105 gives bankruptcy court civil contempt power and such civil contempt proceedings are core proceedings).

■■■ However, § 524(c) permits a debtor to make a voluntary agreement with a creditor to reassume the in personam liability of a dischargeable debt. Such an agreement is commonly known as a reaffirmation agreement. *See* Fed. R. Bankr.P. 4008 (using the term "reaffirmation agreement"). A reaffirmation agreement is a contract between a debtor and a creditor that permits a debtor who cannot pay a debt immediately to keep the property for which the debt was incurred while making periodic payments on that property. *See In re Turner,* 156 F.3d 713, 715 (7th Cir.1998). A reaffirmation agreement is the only means by which a dischargeable debt may survive a Chapter 7 discharge. *Id.* at 718.

■■■ Before a reaffirmation agreement will be binding, certain provisions enumerated in § 524(c) and (d) must be met.[5] These provisions are meant to func-

tion as safeguards against abusive creditor practices. *See Jamo v. Katahdin Fed. Credit Union (In re Jamo),* 283 F.3d 392, 398 (1st Cir.2002); *Turner,* 156 F.3d at 718; 4 *Collier on Bankruptcy* ¶ 524.04 (Lawrence P. King ed., 15th ed.1995). If the reaffirmation agreement complies with these provisions and the debtor does not rescind the agreement within the sixty-day period authorized by § 524(c)(4), the debtor will be bound on the debt as though the debtor had never gone through bankruptcy. *Turner,* 156 F.3d at 718. Thereafter, the creditor will have a right to pursue both its collateral and the debtor for any deficiency. *Id.* at 717–18.

In this case, the Debtors have not argued that the Reaffirmation Agreement did not comply with the statutory provisions delineated in § 524(c).[6] Rather, the Debtors argue that WyHy is liable for civil contempt because it collected more than the amount that the Debtors reaffirmed and in so doing violated the provisions of their Chapter 7 discharge. All of Debtors' arguments focus on the proper interpretation and validity of the Reaffirmation Agreement.

**5.** The following provisions must be met before a reaffirmation agreement will have legal effect: (1) the agreement must be made before the discharge is granted; (2) the agreement must be enforceable under nonbankruptcy law; (3) the agreement must include the following clear and conspicuous statements: (a) the debtor may rescind the agreement at any time prior to the granting of the general discharge, or within sixty days after the execution of the agreement, whichever occurs later; and (b) reaffirmation is neither required by the Bankruptcy Code nor by nonbankruptcy law; (4) the agreement must be filed with the bankruptcy court; and (5) if the debtor is represented by counsel, the agreement must be accompanied by an affidavit of the debtor's attorney attesting as follows: (a) the debtor knowingly and voluntarily executed the agreement; (b) the agreement would not cause the debtor undue financial hardship; and (c) the

debtor was fully advised of the legal effect and consequences of the agreement. *See* 11 U.S.C. § 524(c). In the event that the debtor is not represented by counsel, § 524(c)(6) requires the court to hold a hearing to inform the debtor of the legal significance of the reaffirmation agreement and to ascertain whether the agreement complies with the statutory requirements. If the court holds a discharge hearing and the debtor subsequently desires to enter into a reaffirmation agreement and is unrepresented by counsel, § 524(d) outlines the procedures that must be followed. 11 U.S.C. § 524(d).

**6.** Section 524(c)(6) does not apply because the Debtors were represented by counsel, and § 524(d) does not apply because the court did not hold a discharge hearing under § 727.

A reaffirmation agreement is a contract between a debtor and a creditor. *Turner*, 156 F.3d at 718–19. In substance a reaffirmation agreement is a new contract that renegotiates or reaffirms the original debt. 11 U.S.C. § 524(c); *Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512, 1514 n. 2 (11th Cir.1993). Conventional contract principles apply to reaffirmation agreements. *Turner*, 156 F.3d at 718–719. In construing and interpreting contracts, the court must look to state law. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (property interests of the parties to a bankruptcy proceeding are "created and defined by state law"). Here, the parties entered into the initial contract and subsequent reaffirmation agreement in the state of Wyoming; therefore, in the absence of any agreement otherwise, the contract is governed by Wyoming state law.

In Wyoming, a contract may consist of several documents. *Union Pac. Res. Co. v. Texaco*, 882 P.2d 212, 219 (Wyo. 1994). When a court is interpreting a contract, each part of the instrument memorializing the agreement must be read in light of the other parts. *Id.* Contractual terms will be given "the plain meaning that a reasonable person, in the position of the parties, would understand them to mean." *Id.* at 220. A contract is ambiguous when words are indefinite or capable of being interpreted in more than one way. *Id.* If a contract is found to be ambiguous, then extrinsic evidence may be admitted to determine the party's intentions. *Id.* Extrinsic evidence will not be admitted to contradict the plain meaning of contractual terms. *Id.* If the contract language is unambiguous, then the court is confined to the language within the "four corners" of the contract. *Id.; see also Brashear v. Richardson Constr.*, 10 P.3d 1115, 1118

(Wyo.2000) (finding that while the "court may look to the surrounding circumstances, the subject matter, and the purpose of the contract to ascertain the intent of the parties at the time the agreement was made," the court may not use the context to contradict the express terms of the contract).

The Debtors argue that because the Note and the Reaffirmation Agreement differ on certain provisions, the contract as a whole is ambiguous. In support of this argument, they point to the following differences: the Note called for 130 payments with the maturity date of September 7, 2001, whereas the Reaffirmation Agreement called for 140 payments; the payments under the Note were $197.62 whereas the Reaffirmation Agreement called for payments of $197.38; under the Note the payments were semi-monthly while the Reaffirmation Agreement calls for monthly payments. The bankruptcy court found that these differences did not make the Reaffirmation Agreement ambiguous. We agree.

Here the Contract in dispute consists of two documents: the Note and the Reaffirmation Agreement (hereinafter, the Note and the Reaffirmation Agreement will be referred to collectively as "the Contract"). The Note memorialized the original debt. The Reaffirmation Agreement memorialized the Debtors' agreement to reassume the in personam obligation on WYHY's in rem claim.

When the Debtors signed the Reaffirmation Agreement they were free to negotiate with WyHy the terms of that agreement. Nothing in the Bankruptcy Code mandates that a Reaffirmation Agreement mirror the terms of the original Note.[7] *See, e.g., Booth v. National City*

---

7. In fact, reaffirmation is not the only means through which a debtor may retain encum-

*Bank (In re Booth)*, 242 B.R. 912, 916 (6th Cir. BAP 2000) (finding that a creditor may negotiate for any legal terms in a reaffirmation agreement with a debtor); *Sears, Roebuck & Co. v. Spivey*, 265 B.R. 357, 362–63 (E.D.N.Y.2001) (differentiating between a reaffirmation agreement and a redemption agreement and finding that while redemption agreements are not subject to negotiation, reaffirmation agreements are a matter of negotiation that are subject to a creditor's approval). That some of the terms in the Reaffirmation Agreement are different from the terms in the Note does not render them ambiguous. As we observed above, a reaffirmation agreement is a new contract on the previous debt. The terms in the Reaffirmation Agreement that conflict with the terms in the Note control.

██ Debtors next argue that the terms of the Reaffirmation Agreement reflected that they reaffirmed the sum of $14,431.94 and that this sum included any reaffirmed interest. They contend that it was not their intent to reaffirm either the term life insurance or the interest of 9.89% on the principal balance and that when WyHy collected the semi-monthly payments that included both the term life insurance and the interest it violated the Debtors' discharge. They argue that the Reaffirmation Agreement is invalid because it does not represent a "meeting of the minds." This argument also fails.

██ While reaffirmation agreements are to be strictly construed in favor of the debtor, *In re Petersen*, 110 B.R. 946, 949 (Bankr.D.Colo.1990), the Debtors have failed to show any ambiguity in the terms that would require the interpretation they

advance. The Reaffirmation Agreement mandated 140 payments of $197.38. The Note mandated 130 payments at $197.62. However, the Note was inaccurate with respect to the number of payments required on the obligation after the Debtors ordered the term life insurance, and the Debtors have not argued differently. Clearly, the number of payments, as well as the amount of the monthly payment as recorded on the Reaffirmation Agreement, when read in tandem with the Note, incorporate the term life insurance and the interest rate. Most significant here is that this Reaffirmation Agreement changed nothing fundamental about the Note; it simply reestablished the original obligation. Finally, the Reaffirmation Agreement specifically refers to the interest rate: it states that the sum due is $14,431.94 and the interest rate is 9.89%.

██ The real argument the Debtors attempt to make is not that the terms of the Reaffirmation Agreement are ambiguous but that the document did not reflect their true intent. But as we have already observed, in Wyoming, when the terms are unambiguous, the court's search for the parties' intent is confined to the language within the four corners of the integrated contract. *See Goglio v. Star Valley Ranch Ass'n*, 48 P.3d 1072, 1081 (Wyo.2002). Debtors focus on their misunderstanding of the terms. However, pursuant to Wyoming law, a party cannot avoid a contract on the grounds that the party did not attend to its terms. *First State Bank v. American Nat'l Bank*, 808 P.2d 804, 806 (Wyo.1991). Although the Debtors probably did not completely understand the Reaffirmation Agreement,

---

bered property. A debtor may also choose to redeem or surrender encumbered property. Furthermore, the Tenth Circuit has found that a debtor may also retain encumbered property without reaffirming or redeeming if the

debtor continues to make payments on that property in accord with the original note. *Lowry Fed. Credit Union v. West*, 882 F.2d 1543, 1546 (10th Cir.1989).

they were represented by an attorney who signed a declaration that he had explained the significance and the operation of the Reaffirmation Agreement to them. Moreover, we note that a bankruptcy court has no power to override counsel's approval of a reaffirmation agreement. *See Sweet v. Bank of Okla. (In re Sweet)*, 954 F.2d 610, 612 (10th Cir.1992).

 The Debtors also assert that because the Note was not attached to the Reaffirmation Agreement, the Reaffirmation Agreement was void. We can find no legal support for this argument, and the Debtors have offered none.[8] In this appeal, they simply made the unsupported statement that failure to attach the Note rendered the Reaffirmation Agreement void. This is not an adequate appellate argument. It is the litigant's responsibility to support their argument with appropriate legal authority or alternatively, to show that it is sound despite the lack of authority. *See Brownlee v. Lear Siegler Mgmt. Servs. Corp.*, 15 F.3d 976, 977–78 (10th Cir.1994). We will not consider this argument further.

Finally the Debtors argue that WyHy violated their discharge by making an additional monthly debit of up to $13.32 more than the reaffirmed semi-monthly payment from their account. The bankruptcy court did not address this argument in its order. In the absence of any findings by the bankruptcy court, we cannot know the basis for its ruling and cannot consider the Debtors' arguments here. For this reason we remand to the bankruptcy court for findings on this issue.

*Conclusion*

For the Reasons set forth above, the bankruptcy court's judgment is AFFIRMED on the issue of whether WyHy violated the Debtors' discharge when it collected interest and the term life insurance premiums. We REMAND to the bankruptcy court for findings on the issue of whether WyHy violated the Debtors's discharge by debiting sums from the Debtors' account other than the payment authorized by the Reaffirmation Agreement.

---

8. While § 524(c) requires that the Reaffirmation Agreement be filed with the court prior to a debtor's discharge it does not require the filing of the Note.