**In re Christopher C. GAVITT, Debtor.**

**No. 10–17668.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Signed July 17, 2014.

Entered July 18, 2014.

John H. Forg, Law Office of John H. Forg, West Chester, OH, Cayce A. Stoneburner, Cincinnati, OH, for Debtor.

## ORDER REGARDING REAFFIRMATION AGREEMENT AND DENYING MOTION FOR CONTEMPT

JEFFERY P. HOPKINS, Bankruptcy Judge.

Christopher C. Gavitt, (hereinafter, "Gavitt" or "the Debtor"), filed the current motion ("Motion") (Doc. 25) seeking to have the Court rule favorably for him on three issues: 1) to reopen his chapter 7 bankruptcy case under § 350(b) in order "to accord relief to the debtor, or for other cause;" 2) to enforce the Reaffirmation Agreement covering a residential mort-

gage under state law; and, finally, 3) to hold Fifth Third Mortgage Company ("Fifth Third") in civil contempt for an alleged violation of the discharge injunction under § 524(a) for commencing a foreclosure action to collect "a debt as a personal liability of the debtor," or in the alternative, to "void" the foreclosure judgment obtained with respect to a debt Gavitt contends was discharged in the bankruptcy case. Fifth Third filed a response, to which the Debtor replied. *See* Docs. 28 and 31. A hearing on the Motion, the response, and the reply was held on May 5, 2014. Fifth Third originally opposed the Motion in its entirety, but conceded at the hearing that having this Court reopen the bankruptcy case for the limited purpose of deciding the proper interpretation and effect of the Reaffirmation Agreement might aid the state court in the exercise of its jurisdiction to enforce the agreement.

### Procedural History and Findings of Facts

On November 8, 2010, Gavitt filed a chapter 7 bankruptcy petition seeking relief from his creditors. *See* Doc. 1. On February 8, 2011, the Debtor and a representative from Fifth Third signed the Reaffirmation Agreement which is at the center of the dispute in this case. *See* Doc. 13. The Debtor filed the Reaffirmation Agreement with the Court on February 10, 2011, and, when not rescinded under the bankruptcy laws, it became a valid contract under Ohio law, as of the date of filing, that survived the Debtor's discharge. *In re Gitlitz,* 127 B.R. 397, 400 (Bankr.S.D.Ohio 1991) ("The Reaffirmation Agreement, when executed and not rescinded within the time provided, became a new contract between the parties. The parties now are bound by the terms of this new agreement. Any subsequent breach of the Reaffirmation Agreement is governed by relevant state law."); *see Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct.

914, 59 L.Ed.2d 136 (1979); *Matter of Turner,* 156 F.3d 713, 718 (7th Cir.1998).

The Reaffirmation Agreement provides that the Debtor's "home mortgage loan" for his residence located at 1223 Drott Avenue, Cincinnati, OH 45205, is being reaffirmed, and it requires Gavitt to pay $42,438.60 as the "Amount Reaffirmed," at 6.000% interest on an adjustable rate mortgage. The Reaffirmation Agreement also contains this statement:

> The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before 11/08/2010, which is the date of the Disclosure Statement portion of this form (Part V).

*See* Doc. 13. It is apparent from the parties' conduct that the Reaffirmation Agreement did not eliminate the underlying promissory note and open-end mortgage. In fact, Part I, Subsection G, of the Reaffirmation Agreement which asks the parties to "[s]pecify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement" was left blank. Indeed, the original note and mortgage were affixed firmly to the completed Reaffirmation Agreement form and filed with the Court on February 10, 2011 as a single instrument. *See* Doc. 13. Other than the "Amount Reaffirmed," the Reaffirmation Agreement does not purport to add any new terms or conditions, except for a reduction in the Debtor's interest rate to 6.000% from the 8.6250% originally stated in the promissory note and adjustable rate rider accompanying the mortgage. Based on the totality of the circumstances, it is clear that both Gavitt and Fifth Third intended for the reaffirmed debt to incorporate the parties' rights as they existed under the original note and mortgage,

modified only slightly by a lowering of the adjustable interest rate. *See* Doc. 13.

On June 14, 2011, Gavitt received a discharge of all remaining debts owed to creditors, and the bankruptcy case was closed on February 26, 2013. *See* Doc. 22.

After the Reaffirmation Agreement took effect on February 10, 2011, Gavitt defaulted on the August 2011, December 2011, and March 2012 mortgage payments to Fifth Third. In an apparent attempt to cure the default, Gavitt made a double payment with the January 2012 mortgage payment to Fifth Third.[1] However, in response to the missed payments, Fifth Third sent a letter dated March 28, 2012, demanding immediate payment of $5,053.06 on the arrearage ("Demand Letter"). In the Demand Letter, Fifth Third also threatened to accelerate the loan and to begin foreclosure proceedings if Gavitt failed to pay the full amount within 30 days. *See* Debtor's Exhibit 9.

Fifth Third's Demand Letter, however, included both prepetition and post-reaffirmation arrearage amounts. At the hearing, counsel for Fifth Third admitted that the $5,053.06 referenced in the Demand Letter exceeded the amount of the debt on the missed mortgage payments and late fees that the Debtor incurred post-reaffirmation. Fifth Third's attorney also conceded that inclusion of the prepetition arrearage which had accrued under the original note and mortgage in the Demand Letter was done in error, because the parties had agreed to place all the "unpaid principal, interest, and fees and costs arising on or before 11/08/2010," which totaled $42,438.60, as the "Amount Reaffirmed" in the Reaffirmation Agreement.

On June 4, 2012, Fifth Third carried out its threatened action by filing a foreclosure action in state court claiming that the Debtor was in default and that there was a remaining balance of $36,977.12 due on the reaffirmed debt under the agreement. *See* Fifth Third's Exhibit F. On May 14, 2013, Fifth Third filed a motion for summary judgment in the state court foreclosure action which was granted on July 2, 2013. The magistrate who decided the summary judgment motion concluded that the Debtor was in default on the note since January 1, 2012, with the Debtor's first missed post-reaffirmation mortgage payment, that the note could be accelerated, and that there was a sum due of $36,977.12, plus interest. *See* Fifth Third's Exhibits G and H.

On July 25, 2013, subsequent to the magistrate's ruling, the Debtor filed a motion for sanctions in state court against Fifth Third and Fifth Third's counsel for violations of the Reaffirmation Agreement, the automatic stay, and the discharge injunction. *See* Doc. 28, Exhibit A. Thereafter, on November 20, 2013, the state court judge issued an order vacating the magistrate's summary judgment decision, finding "that there [were] material issues present as to whether or not the reaffirmation agreement allowed for the acceleration of [the Debtor's] prior debt, which was accumulated before [the Debtor's] bankruptcy proceedings and before the reaffirmation agreement between [the Debtor and Fifth Third]." *See* Fifth Third's Exhibit I. The judge in the state court action also issued an order on November 20, 2013, denying the Debtor's motion for sanctions. *See* Fifth Third's Exhibit J.

On January 26, 2014, the Debtor filed the current Motion. Specifically, the Mo-

---

1. In addition to the double payment made in January 2012, the Debtor made and Fifth Third returned payments made in April 2012, May 2012, and two payments in June 2012. *See* Creditor's Exhibit E.

tion asks for a "finding (*i* ) that [the Debtor] has reaffirmed a debt of $42,438.60, to be repaid under the Reaffirmation Agreement; and (*ii* ) that the Foreclosure Action seeks to enforce a pre-petition debt and thereby violates the permanent injunction imposed by 11 U.S.C. § 524(a) and (b)." *See* Doc. 25.

The dispute in this case is not over the validity of the Reaffirmation Agreement or whether it fails to comply with the statutory provisions delineated under § 524(c) and (d). Both Fifth Third and the Debtor acknowledge the agreement's validity and enforceability. Instead, the Debtor contends that Fifth Third is seeking to recover prepetition arrearage on the original note and mortgage dating back as far as September 2007, and Fifth Third's refusal to accept certain of the Debtor's post-reaffirmation payments constitutes a breach the Reaffirmation Agreement. Gavitt also would have this Court believe that Fifth Third's filing of the foreclosure action itself constitutes a violation of the discharge injunction since it is based on the original note and mortgage and seeks to recover an amount in excess of the reaffirmed debt arising from prepetition arrearage.

Fifth Third counters arguing that the state foreclosure action is predicated solely on the reaffirmed debt, which incorporates the prepetition arrearage from the original mortgage and the remaining post-reaffirmation principal and interest due under the revived note. According to Fifth Third, the promissory note and mortgage underlying the Reaffirmation Agreement allowed it to declare a default, accelerate the mortgage and ultimately pursue the foreclosure action in state court against Gavitt.

For the reasons that follow, the Debtor's Motion seeking an order to enforce the Reaffirmation Agreement and to impose monetary sanctions against Fifth Third for violating the discharge injunction is **DENIED.**

### *Subject Matter Jurisdiction*

■ The basis for federal court jurisdiction over bankruptcy cases is derived from the operation of 28 U.S.C. § 157(a) and 28 U.S.C. § 1334. Under § 157(a), "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Section 1334 then provides that the district courts have jurisdiction over "cases under title 11," and "proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a) and (b). Because the jurisdictional provisions of § 1334 operate conjunctively to determine the extent of a bankruptcy court's jurisdiction, it is not necessary to distinguish among them and instead "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *In re Thickstun Bros. Equip. Co., Inc.,* 344 B.R. 515, 520 (6th Cir. BAP 2006) (quoting *In re Wolverine Radio Co.,* 930 F.2d 1132, 1141 (6th Cir. 1991)).[2]

■ In determining whether a matter falls under a bankruptcy court's related to jurisdiction, the Sixth Circuit follows the test found in *Pacor, Inc. v. Higgins (In re Pacor),* 743 F.2d 984 (3d Cir.1984). *Thickstun,* 344 B.R. at 520. Under *Pacor,* a matter is related to the underlying bankruptcy procedure if *"the outcome of that*

---

**2.** See *also In re Grabinski,* 150 B.R. 427, 432 (Bankr.N.D.Ill.1993) ("A post-discharge motion that seeks a ruling on the effect of an alleged reaffirmation agreement is a proceed-

ing that arises under Title 11.") (cited with approval in *In re Booth,* 242 B.R. 912, 916 (6th Cir. BAP 2000)).

*proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor,* 743 F.2d at 994 (emphasis in original). Therefore, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.*

### Reaffirmation Agreement Incorporated Underlying Obligations

 By entering into a reaffirmation agreement, the debtor and the creditor are entering into a new contract that either reaffirms or renegotiates the original debt. *In re Taylor,* 3 F.3d 1512, 1514 n. 2 (11th Cir.1993); *In re Schott,* 282 B.R. 1, 7 (10th Cir. BAP 2002). When entering into a reaffirmation agreement, the debtor and the creditor are free to negotiate the terms of the agreement and the Bankruptcy Code does not require that the agreement mirror the terms of the original note. *Schott,* 282 B.R. at 7; *see In re Booth,* 242 B.R. 912, 916 (6th Cir. BAP 2000); *In re Pickerel,* 433 B.R. 679, 685 (Bankr. N.D.Ohio 2010). If the debtor and the creditor do not renegotiate but instead merely reaffirm the original debt, then "the creditor can proceed to enforce its rights as if bankruptcy had not intervened." *See In re Jamo,* 283 F.3d 392, 398 (1st Cir.2002); *Arruda v. Sears, Roebuck & Co.,* 273 B.R. 332, 346 (D.R.I.2002).

As noted, the parties in this case entered into a binding Reaffirmation Agreement, and neither disputes the agreement's validity or enforceability. Under that agreement, the Debtor explicitly reaffirmed his personal liability to make mortgage payments to Fifth Third on the outstanding principal balance of $38,253.71,[3] plus the accrued prepetition fees and charges which amounted to $4,184.89. Thus, the total "Amount Reaffirmed" on February 10, 2010, was for a debt of $42,438.60, which was to be paid on the first of each month, at 6.000% interest on an adjustable rate mortgage.

 In addition to reaffirming the principal and certain accrued prepetition fees and expenses, the parties also contracted to reinstate the terms of the underlying promissory note and open-end mortgage appended to the Reaffirmation Agreement. When the Debtor and Fifth Third were negotiating the terms of the Reaffirmation Agreement, both parties were free to renegotiate new terms and conditions. However, the Reaffirmation Agreement is silent as to any new terms, except as noted, for a lowering of the adjustable mortgage interest rate to 6.000%. *See Booth,* 242 B.R. at 916; *Pickerel,* 433 B.R. at 685. It is clear, however, from the conduct of the parties and from the attachment of the note and open-end mortgage to the Reaffirmation Agreement filed with the Court that Fifth Third's contractual rights, pursuant to the underlying instruments were fully restored. *Eiler,* 390 B.R. at 925 ("[U]nder appropriate circumstances, a reaffirmation agreement and the note/mortgage instruments may be construed together."); *see Int'l Ass'n of Machinists & Aerospace Workers v. ISP Chemicals, Inc.,* 261 Fed. Appx. 841, 848 (6th Cir.2008) ("As the Third Circuit has observed, '[i]ncorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship.'") (quoting

---

**3.** On February 8, 2011, the date the Debtor entered into the reaffirmation agreement with Fifth Third, the Debtor owed $38,253.71 owed on the underlying note. *See* Fifth Third's Exhibit E.

*Standard Bent Glass Corp., v. Glassrobots Oy,* 333 F.3d 440, 447 (3d Cir.2003)); *Disc. Drug Mart, Inc. v. Devos, Ltd.,* 1:12 CV 00386, 2013 WL 5820044, at *2 (N.D.Ohio Oct. 29, 2013) (" 'Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship.' ") (quoting *ISP Chemicals, Inc.,* 261 Fed.Appx. at 848); *Wendy's Int'l, Inc. v. Saverin,* 2:07–CV–069, 2008 WL 2704385, at *6 (S.D.Ohio July 3, 2008) (" 'Where a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument.' ") (quoting 11 Williston on Contracts § 30:25 (4th ed. 2008)); *see also* 11 Williston on Contracts § 30:25 (4th ed. 2013) ("Where a writing refers to another document, that other document, or portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument.").

In the case at bar, Gavitt is not seeking to enforce any rights that may be asserted under the Bankruptcy Code, other than the civil contempt claims for an alleged violation of the discharge injunction under § 524(a), dealt with later in this order. Instead, the Debtor is seeking to enforce his state law rights, as he perceives them to be, "under a contract that the Bankruptcy Code has permitted to pass through the bankruptcy case unaffected (except to the extent that it was modified by the parties' reaffirmation agreement)." *In re Kahn,* 406 B.R. 269, 276 (Bankr.E.D.Pa. 2009). "These are matters clearly within the province of the state court," *Gitlitz,*

127 B.R. at 400, and as the result there is no basis for this Court to exercise jurisdiction.

■■■■ As the *Kahn* court, quoting extensively from a decision by a distinguished former member of this Court[4] so eloquently states:

Contrary to the Debtor's implicit premise, an enforceable reaffirmation agreement is a new contract to which conventional contract principles apply, construed in accordance with relevant state law. *Eiler,* 390 B.R. at 924.

Once formed in accordance with the procedures mandated by the Bankruptcy Code in 11 U.S.C. § 524(c), any subsequent breach of a reaffirmation agreement is governed by relevant state law. *In re Gitlitz,* 127 B.R. 397, 400 (Bankr. S.D.Ohio 1991); *see also* 11 U.S.C. § 524(c) ("[a]n agreement ... based on a debt that is dischargeable ... is enforceable only to any extent enforceable under applicable nonbankruptcy law"). As the court reasoned persuasively in *In re Gitlitz:*

Congress clearly did not contemplate bankruptcy court involvement in reaffirmation agreements beyond the requirements set forth in § 524(c) and (d). It was contemplated that disputes between parties to reaffirmation agreements would take place in non-bankruptcy courts using nonbankruptcy law.

127 B.R. at 400 (citation omitted).

*Kahn,* 406 B.R. at 275–76. Such is the case here.

Having determined the effect of the Reaffirmation Agreement and the proper construction to be given that agreement, the Court now turns to the issue of mone-

**4.** As of this writing, Honorable R. Guy Cole, the author of *Gitlitz,* currently presides as a judge of the U.S. Court of Appeals for the Sixth Circuit.

tary sanctions sought by the Debtor against Fifth Third for allegedly violating the discharge injunction under § 524(a).

### Sanctions

Section 524 provides that a discharge under § 727 "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). The chapter 7 discharge prevents creditors from collecting on discharged debts to the extent that the recovery is sought as a personal liability of a debtor. *In re Duling*, 360 B.R. 643, 645 (Bankr.N.D.Ohio 2006). However, while § 524(a) enjoins creditors from collecting on a discharged debt, a debtor has no private right of action to pursue damages for a violation of § 524(a). *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422–23 (6th Cir.2000).

Despite no private cause of action existing under § 524, a debtor can request that a creditor be held in contempt for violating the discharge injunction and sanctions can be imposed under § 105. *Id.* at 421; *In re Gunter*, 389 B.R. 67, 71 (Bankr.S.D.Ohio 2008). In order for a court to impose sanctions for a violation of the discharge injunction, the debtor must show by clear and convincing evidence that the discharge injunction was violated and that the violation was done with actual knowledge of the injunction. *In re Holley*, 473 B.R. 212, 215 (Bankr.E.D.Mich.2012) (quoting *In re Frambes*, No. 08–22398, 2012 WL 400735, at *5 (Bankr.E.D.Ky.

Feb. 7, 2012)). In order for a debtor to recover actual damages as a sanction for a violation of the discharge injunction, a debtor must suffer actual injury that can be substantiated with adequate proof. *In re Martin*, 474 B.R. 789 (6th Cir. BAP 2012).

In this case, the Debtor cannot show by clear and convincing evidence that the discharge injunction was violated. "[A] reaffirmation agreement has the effect of reaffirming a debtor's preexisting in personam liability on the underlying obligations giving rise to the debt." *Matter of Duke*, 79 F.3d 43, 44 (7th Cir.1996). By entering into the Reaffirmation Agreement, the Debtor voluntarily waived his right to have the Fifth Third debt discharged, gave Fifth Third the ability to collect on the reaffirmed debt without violating the discharge injunction, and restored Fifth Third's ability to enforce the debt in case of a post-reaffirmation default pursuant to the terms of the underlying original note and mortgage. *See In re Eiler*, 390 B.R. 920, 924 (Bankr.E.D.Wis. 2008).

As a creditor favored by the provisions of § 524(c), Fifth Third was permitted to enforce the reaffirmed debt and the underlying obligation as though no bankruptcy had occurred, personally against Gavitt. The Reaffirmation Agreement incorporating Fifth Third's restored rights under the note and mortgage was filed and became effective on February 10, 2011. Payments received by Fifth Third after the fifteenth of each month are considered late under the note and could be assessed a charge of 5% on the principal and interest.[5] Begin-

---

5. Paragraph 6(A) of the Adjustable Rate Note provides Fifth Third's remedy in the case where the Debtor makes a partial payment or the payment is received after the fifteenth of each month, and it reads as follows:

6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will

ning with the first missed post-reaffirmation mortgage payment (which would have been August 1, 2011), each late, missed or partial mortgage payment Gavitt made under the agreement thereafter gave rise to Fifth Third's right to declare Gavitt in default.[6] Gavitt concedes that he defaulted on the August 2011, December 2011, and March 2012 mortgage payments to Fifth Third. With each late, partial or missed mortgage payment, Fifth Third had a contractual right to assess Gavitt with charges in the amount of "5% of the overdue payment of principal and interest," including "reasonable attorney's fees." Thus, to the extent that Fifth Third seeks to recover in the state foreclosure action the arrearage accrued post-reaffirmation, there can be no violation of the discharge injunction. Similarly, Fifth Third clearly had the right to accelerate the note by sending the Debtor "a written notice telling [him] that if [the Debtor] did not pay the overdue amount by a certain date, the Note Holder [Fifth Third] may require [the Debtor] to pay immediately the full amount of the principal which has not been paid and the interest that [the Debtor] owe[s] on that amount . . . at least 30 days after the date on which the notice is delivered." *See* Debtor's Exhibit 1, Paragraph 6(C).

On the record presented, the Debtor has not shown by clear and convincing evidence that Fifth Third violated the discharge injunction. If the Debtor had demonstrated by the evidence that Fifth Third was attempting to collect more than the reaffirmed amount, then there might exist a possible violation of the discharge injunction. *See Schott,* 282 B.R. at 9 (case remanded to the bankruptcy court for findings on the issue of whether the creditor violated the discharge by debiting sums from the debtor's account other than the payment authorized by the Reaffirmation Agreement); *Eiler,* 390 B.R. at 926 ("As a sanction for Well's Fargo's violation of the discharge injunction for its attempt to collect a obligation in excess of what was due following discharge, the portion of Wells Fargo's claim consisting of attorney's fees and costs shall be denied."). Here, however, the Debtor presented no evidence es-

---

pay a late charge to the Note Holder. The amount of the charge will be 5% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
*See* Debtor's Exhibit 1.

**6.** Paragraph 6(B)–(E) of the Adjustable Rate Note underlying the Reaffirmation Agreement, contain the default provisions that read as follows:

6. BORROWER'S FAILURE TO PAY AS REQUIRED
 * * *
(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the Interest that I owe on that amount. That date must be at least *30* days after the date on which the notice is delivered or mailed to me.
(D) No Waiver by Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. *See* Debtor's Exhibit 1. Also see Paragraph 21 of the Open End Mortgage where similar language appears. *See* Debtor's Exhibit 2.

tablishing that Fifth Third is attempting to collect a prepetition mortgage arrearage on the original note and mortgage dating back to September 2007, or later.

That Fifth Third mistakenly sent a Demand Letter on March 28, 2012, stating an erroneous arrearage of $5,053 that also included prepetition late charges and fees, was unfortunate, but not fatal under a § 524 analysis. Even when reviewed in a light most favorable to the Debtor, Fifth Third's conduct in this regard does not constitute an attempt to collect on a prepetition debt in violation of the discharge injunction. The fact remains that the prepetition arrearage accrued under the original mortgage is still part of the reaffirmed debt and was not discharged in the bankruptcy. Fifth Third's error in misstating the post-reaffirmation arrearage amount in the March letter is legally insignificant in light of the Debtor's own admissions that he defaulted on the post-reaffirmation mortgage payments in the case, including those already noted for the missed August 2011, December 2011, and March 2012 payments. In sum, the Debtor's missed payments constitute a fresh default under the provisions of the restored note and mortgage giving rise to Fifth Third's right to institute a foreclosure action, even though the arrearage amount in the Demand Letter was erroneous. It follows then that Fifth Third was well within its rights under the Reaffirmation Agreement, incorporating the restored note and mortgage, to refuse to accept further mortgage payments from the Debtor. Far from being a breach, Fifth Third's foreclosure action, albeit a very aggressive one in the face of only a few late or missed mortgage payments, constituted a proper exercise of its rights under of the Reaffirmation Agreement. Reaffirmation of an otherwise dischargeable debt is a very serious undertaking and one which congress felt it necessary to subject to extensive court oversight and approval. *See* 11 U.S.C. § 524(c) and (d). However, "if the debtor elects to reaffirm the debt, he '[will] be bound as if he had never gone through bankruptcy, and the creditor [will] have a right not only to pursue its collateral, but to pursue the debtor for any deficiency on its loan balance after credit for the value of the collateral.'" *Matter of Turner*, 156 F.3d 713, 717–18 (7th Cir.1998) (other citations omitted).[7]

### Conclusion

Based on the foregoing, the Debtor's Motion to enforce the Reaffirmation Agreement along the lines he advances is **DENIED**. Further, Debtor's request for the Court to hold Fifth Third in civil contempt for an alleged violation of the permanent injunction imposed by 11 U.S.C. § 524(a) and (b) is, likewise, **DENIED**.

---

**7.** Unlike the debtors in *Rogers v. Huntington Natl. Bank*, 2004–Ohio–7045, 2004 WL 2980597 (Ohio Ct.App.2004), who were able to limit the extent of their personal liability under the terms of the reaffirmation agreement entered in that case to a fraction of what they actually owed (indebtedness lowered from $82,757 to $21,015), the Debtor in this case is personally liable on the entire "Amount Reaffirmed" which on 11/08/2010 totaled $42,438.60. After subtracting the post-reaffirmation agreement payments that the Debtor has made, the reaffirmed debt now includes post-reaffirmation late charges and reasonable attorney's fees. The post-reaffir-mation agreement payments must also be applied according to the terms of the underlying note and mortgage. Consequently, if successful in the foreclosure litigation, Fifth Third will be able to pursue Gavitt for any deficiency on its loan balance after he receives credit for the amount that the repossessed residence is sold for. Moreover, as *Rogers* accurately states, a discharge under § 727 does not prevent an in rem action such as repossession and foreclosure to recover the residence which is secured by Fifth Third's mortgage, once the Debtor defaulted on the payments. *Id.* at *3

Any breach of the Reaffirmation Agreement, as determined to exist by this Order, is governed under state law and is within the province of the state court to decide. The bankruptcy case will be closed and the matter transferred back to the docket of the state court.[8]

**IT IS SO ORDERED.**

---

8. Given its familiarity with Ohio law and procedure, this Court will not arrogate to itself the authority to dictate the outcome of the state court foreclosure litigation. The decision whether Fifth Third is entitled to the foreclosure relief that it seeks against Gavitt rests positively in the very capable hands of the state court.