NOT RECOMMENDED FOR PUBLICATION
File Name:  19a0207n.06

**No. 18-5361**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 24, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TERESA CHANDLER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| PEOPLES BANK & TRUST COMPANY OF HAZARD, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| | ) | OPINION |
| Defendant-Appellee. | ) | |

BEFORE:    GIBBONS, ROGERS, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  This case involves claims for breach of contract and violation of the Fair Credit Reporting Act (FCRA) arising from a reaffirmation agreement between a debtor in bankruptcy proceedings and the holder of the reaffirmed debt.  For the reasons set forth below, we affirm the district court's dismissal of the claims.

## I.  BACKGROUND

On May 7, 2012, Teresa Chandler and her husband, Jerry, took out a loan with Peoples Bank & Trust Company of Hazard and secured it with their mobile home.  The loan was for $9,882.37 at an interest rate of 11.00% to be paid in 48 payments—$136.19 due on the seventh of every month for 47 months, with "one irregular last payment . . . due on May 7, 2016 . . . for all principal and all accrued interest not yet paid."  After making 13 timely payments, Chandler missed a payment on July 7, 2013, and, on July 30, she and her husband filed for Chapter 7 bankruptcy.

On August 8, Chandler made her fourteenth payment of $136.19 to Peoples Bank, which the bank applied to the missed July 7 payment. The next day, August 9, Peoples Bank filed a Proof of Claim in Chandler's bankruptcy case stating that the principal remaining on the loan was a secured claim of $9,260.38, plus $164.94 in accrued interest and $40.86 in late fees, for a total "payoff amount" of $9,466.18. This Proof of Claim was based on Chandler's account information from August 5 and did not reflect the August 8 payment, stating that only 13 of the required 48 payments had been made. It noted that $177.05 was past due—the July 7 monthly payment of $136.19, plus $40.86 in late charges. When Peoples Bank applied the August 8 payment to Chandler's missed July 7 payment, her principal balance decreased from $9,260.38 to $9,208.23, and her accrued interest decreased to $80.90. Including late fees and the daily interest generated on the loan, by August 14, the total amount due on the loan was $9,355.03.

On August 14, Peoples Bank generated a Reaffirmation Agreement using a form document supplied by the U.S. Bankruptcy Courts. The Agreement was filled out by hand with the following terms: $9,355.02 of reaffirmed debt secured by the mobile home, an 11.00% annual interest rate, and repayments of $136.19 per month for 34 months, "with all Remaining Principal + Interest due @ maturity." The Agreement also noted that the debtors were represented by an attorney, had the ability to pay the monthly payment, and did not believe the Agreement would impose an undue hardship on them. Chandler and her husband signed the Agreement on August 20, their attorney signed on August 21, and a Peoples Bank representative signed on August 26. The Agreement was filed with the Bankruptcy Court of the Eastern District of Kentucky on September 11, 2013.

Because Chandler had made a payment on August 8, she believed that at the time she signed the Agreement, she had already paid her first payment under that Agreement, which was due August 7. She did not make another payment until October 3, assuming that it would satisfy

the amount due for September 7, albeit 27 days late. Peoples Bank, having applied her August 8 payment to the past-due July bill, reported Chandler to the consumer reporting agencies (CRAs) as 30 days late on the August payment, as data furnishers do when a debtor is between 30–59 days late. Peoples Bank also charged Chandler a late fee of $6.81. After receiving her October 3 payment, Peoples Bank recorded it as a late payment of her past-due August 7 bill, reported her as 30 days late on her September payment, and again charged Chandler a late fee of $6.81. On October 31, Chandler made another payment, assuming that it would satisfy the past-due October 7 bill; Peoples Bank applied that payment to her September 7 bill and charged a late fee. When she missed the November payment "[d]ue to her confusion over . . . payments made," Peoples Bank reported her as 60 days late on her October bill and charged a late fee. This pattern—with Chandler operating on a payment schedule that assumed her August payment had satisfied her August bill and Peoples Bank reporting each payment as late and charging late fees each month— continued until she paid off the loan entirely in June 2016. Peoples Bank thus reported Chandler as at least 30 days late for every monthly payment she made between August 2013 and June 2016. According to Chandler, during this time, "Peoples Bank constantly harassed [her] with collection calls, threats, and 'visits' to her property which harassment caused her great emotional distress, anxiety, and mental distress."

In March 2016, Chandler and her husband sent letters to the three major CRAs disputing her reported late payment history on the mobile-home loan. She alleges that the CRAs sent or should have sent notice to Peoples Bank about the disputes, triggering the bank's duty under the FCRA to conduct a reasonable investigation into Chandler's disputes. She also sent letters to Peoples Bank challenging the accuracy of the payment history appearing on her credit reports. In

response to one or more CRA's requests, Peoples Bank verified as accurate the late payment history that Chandler disputed.

In February 2017, Chandler filed a complaint against Peoples Bank for state-law breach of contract and violations of the FCRA, 15 U.S.C. §§ 1681n and 1681o. Upon Peoples Bank's motion to dismiss, the district court found that Peoples Bank appropriately applied Chandler's August 8 payment to the original loan agreement—the only then-existing agreement between the parties— to satisfy the past-due July 7 bill. The district court determined that Peoples Bank did not breach the (yet-to-be-entered) Reaffirmation Agreement on August 8, nor did it breach the Agreement in connection with any of Chandler's subsequent payments. The district court held that Peoples Bank therefore reported accurate information to the CRAs and did not violate the FCRA and dismissed Chandler's claims with prejudice. Chandler timely appealed.

## II. ANALYSIS

### A. Standard of Review

A district court's order granting a Rule 12(b)(6) motion to dismiss is reviewed de novo. *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 382 (6th Cir. 2016). We construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Breach of Reaffirmation Agreement

We begin with the breach of contract claim. A reaffirmation agreement is a contract that "selectively excludes some debts from the effect of a bankruptcy discharge." *In re Bailey*, 664

F.3d 1026, 1028 (6th Cir. 2011); *see* 11 U.S.C. § 524(c). A debtor and a holder of a claim may negotiate "a new contract between the parties," and the debtor may retain possession of secured property during the bankruptcy proceedings. *In re Gitlitz*, 127 B.R. 397, 400 (Bankr. S.D. Ohio 1991). The reaffirmation agreement either "renegotiates or reaffirms the original debt." *In re Schott*, 282 B.R. 1, 7 (B.A.P. 10th Cir. 2002). Where it differs from the original agreement, the reaffirmation agreement controls, but if the agreements do not specifically differ, the original agreement controls. *In re Hotujac*, 102 B.R. 733, 735 (Bankr. W.D. Mo. 1989). "In either event, the original agreement is reinstated, except as to any differing terms, and rises from the tomb of bankruptcy like a latter day Lazarus." *Id.*; *see Rupert v. Ohio Valley Nat'l Bank*, No. 2002-CA-001527-MR, 2003 WL 22359514, at *3 (Ky. Ct. App. Oct. 17, 2003). Entering into a valid reaffirmation agreement fully restores the rights of the creditor and permits enforcement of the debt in case of default. *In re Eiler*, 390 B.R. 920, 924 (Bankr. E.D. Wis. 2008).

To be enforceable, a reaffirmation agreement must strictly comply with the disclosure, timing, and other requirements of 11 U.S.C. § 524(c). *In re Morton*, 410 B.R. 556, 561–62 (B.A.P. 6th Cir. 2009). A reaffirmation agreement is not made until it is in writing and signed by both the debtor and the creditor. *In re Jenerette*, 558 B.R. 189, 191 (Bankr. E.D. Mich. 2016). If a debtor represented by an attorney enters into a reaffirmation agreement that complies with the requirements and there is no presumption of undue hardship, the agreement becomes effective immediately upon filing with the bankruptcy court. 11 U.S.C. § 524(k)(3)(J)(i).

A reaffirmation agreement is enforceable under "applicable nonbankruptcy law," including state contract law. 11 U.S.C. § 524(c). The parties do not dispute that as a contract formed by parties in Kentucky, Chandler's Reaffirmation Agreement is enforced under Kentucky contract law. "Under Kentucky law, in order to recover in any action based on breach of a contract, a

plaintiff must show the existence and the breach of a contractually imposed duty." *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001) (citing *Strong v. Louisville & Nashville R.R. Co.*, 240 Ky. 781, 43 S.W.2d 11, 13 (1931)). As to Peoples Bank's breach of a contractually imposed duty, Chandler makes two arguments on appeal: (1) that Peoples Bank violated the automatic stay imposed by 11 U.S.C. § 362 when it applied Chandler's August 8 payment to a prepetition debt and (2) that the Agreement should be construed as requiring application of the August 8 payment to the first payment required under the Agreement, not to the missed July 7 payment under the original loan agreement. We address the arguments in turn.

1. Automatic Stay

A bankruptcy petition operates as a stay of any action by a creditor to enforce a prepetition loan against a debtor. 11 U.S.C. § 362. Chandler argues that Peoples Bank could not have applied the August 8 payment to the July 7 debt because the automatic stay was in effect beginning July 30, when Chandler and her husband filed for Chapter 7 bankruptcy.

This argument appears for the first time on appeal. "If a party fails to raise an issue to the district court, then that party 'forfeits the right to have the argument addressed on appeal.'" *Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*, 689 F.3d 793, 799 (6th Cir. 2012) (quoting *Armstrong v. City of Melvindale*, 432 F.3d 695, 699–700 (6th Cir. 2006)). Even if not forfeited, this argument also fails on the merits. Chandler concedes that after she filed for bankruptcy, Peoples Bank could continue to accept her voluntary payments under the Bankruptcy Code. *See* 11 U.S.C. § 524(f) ("Nothing contained in subsection (c) or (d) of this section [establishing reaffirmation agreements] prevents a debtor from voluntarily repaying any debt."). Even without a reaffirmation agreement, "a secured creditor's acceptance of voluntary payment does not run afoul of the automatic stay as long as the payments have not been induced improperly." *Pertuso v. Ford Motor Credit Co.*, 233

F.3d 417, 423 (6th Cir. 2000). Chandler does not allege that Peoples Bank improperly solicited her August 8 payment. Peoples Bank did not violate the automatic stay.

### 2. Contract Interpretation

It is undisputed that the Reaffirmation Agreement did not become effective until it was signed by all the relevant parties and filed with the court. *See Jenerette*, 558 B.R. at 191. A Peoples Bank representative provided the final signature on August 26, and the Agreement was filed on September 11. Based on this timeline, Peoples Bank could not have violated the Agreement on August 8, when it applied Chandler's payment to her prepetition loan, because the Agreement did not yet exist. The Agreement became effective on September 11, when it was filed with the bankruptcy court, and specified that the first payment became due on August 7. Peoples Bank argues that it properly applied Chandler's post-August 26 payments to satisfy the Agreement's clear terms, which match those of the original loan agreement. Chandler argues that the terms of the Agreement require one fewer payment than her original loan agreement; in essence, she believes that the Agreement forgave her missed July 7 payment.

Peoples Bank is correct that the terms of the Agreement match those of the original loan agreement in every respect. The terms of the original loan agreement provide for 47 monthly payments of $136.19 *plus* "one irregular last payment . . . due on May 7, 2016 . . . for all principal and all accrued interest not yet paid," for a total of 48 payments. The 48-month loan thus required 48 total payments. By the time she filed for bankruptcy on July 30, Chandler had made 13 payments and missed her fourteenth payment of $136.19 due on July 7, 2013; 35 payments remained. After she made the August 8 payment that Peoples Bank applied to the past-due July 7 bill, 34 payments remained on the original loan, with the first of the 34 payments due on August 7, 2013. Similarly, the Reaffirmation Agreement's repayment terms provide for 34 monthly payments of $136.19, "with all Remaining Principal + Interest due @ maturity." The Agreement

thus requires the same remaining payments as the original loan agreement: 33 monthly $136.19 payments and, for the thirty-fourth payment at maturity, a final balloon payment. There is no ambiguity in the Agreement that requires further construal. *See Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384–85 (Ky. Ct. App. 2002). Because the Agreement adopted the terms of the original loan agreement, no monthly payment was forgiven, and Peoples Bank correctly applied Chandler's payments.

Although Chandler had some grounds for her misunderstanding of the Agreement, Peoples Bank did not have a contractual duty to reallocate her August 8 payment under the later-entered Reaffirmation Agreement or to require any fewer than 48 total payments over the life of this loan. We affirm the dismissal of Chandler's contract claim.

## C. Violation of the FCRA

Chandler's other claims arise under the FCRA, which exists to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007)). The FCRA imposes a duty on furnishers of credit information to provide accurate information about their customers to CRAs. 15 U.S.C. § 1681s-2(b). If a dispute arises over a CRA's consumer information and a CRA notifies the furnisher of that disputed information, under § 1681s-2(b), the furnisher must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA, irrespective of the outcome of its investigation; (4) report any inaccuracies to other CRAs; and (5) modify, delete, or permanently block inaccurate or incomplete information. *Id.*; *see Boggio*, 696 F.3d at 616–18. The FCRA creates a private right of action to enforce § 1681s-2(b) against furnishers for negligently or willfully failing to comply with the relevant requirements. *Boggio*, 696 F.3d at 616.

Chandler's first FCRA claim against Peoples Bank is under § 1681n, which prohibits willful noncompliance with § 1681s-2(b), and her second is under § 1681o, which prohibits negligent noncompliance with § 1681s-2(b). *See* 15 U.S.C. §§ 1681n, o. Chandler is a consumer who disputed her credit information, and Peoples Bank is a furnisher of credit information to CRAs. Peoples Bank thus had a duty, when notified of a dispute by a CRA in March 2016, to conduct a reasonable investigation of Chandler's disputed information, notify CRAs of the result of the investigation, and remedy any inaccuracies or gaps in Chandler's information. *See Boggio* at 616–18. As discussed above, because Peoples Bank did not breach the Agreement and correctly applied the August 8 payment to Chandler's past-due July 7 payment, Chandler was over 30 days late when she made her past-due August 7 payment on October 3. She was again over 30 days late when she made her past-due September 7 payment on October 31, and so on, in what the district court aptly called a "domino effect." Though there were problematic consequences for Chandler, Peoples Bank accurately reported Chandler's late payments. We have held "that a threshold showing of inaccuracy of incompleteness is necessary in order to succeed on a claim under § 1681s-2(b)." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 629 (6th Cir. 2018). Because Chandler cannot show any inaccuracy or incompleteness, her claims under § 1681s-2(b) fail. Under the terms of this Agreement and the applicable facts, Peoples Bank did not violate the FCRA and Chandler's two FCRA claims were properly dismissed.

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's dismissal of this case under Fed R. Civ. P. 12(b)(6).